DICKERSON v RAPHAEL

Docket Nos. 172610, 176209. Submitted February 6, 1996, at Grand Rapids.
Decided March 7, 1997, at 9:10 A.M. Leave to appeal sought.

Dorothy J. Dickerson brought an action in the Washtenaw Circuit
Court against Sally Jessy Raphael and others, seeking damages fol-
lowing the surreptitious, nonconsensual recording, simultaneous
transmission, and later broadcast on the Sally Jessy Raphael televi-
sion show of the plaintiff's private conversation with others by cer-
tain defendants, who were not themselves parties to the conversa-
tion. The plaintiff alleged, in part, violation of the Michigan eaves-
dropping statutes, MCL 750.539 *et seq.*; MSA 28.807 *et seq.* The trial
court, Melinda Morris, J., denied the plaintiff's motion for a
directed verdict regarding the alleged violation of the eavesdrop-
ping statutes and, consistent with the verdict of the jury, entered a
judgment of no cause of action for the defendants. The plaintiff
appealed from the order denying her motion for a directed verdict.
Defendants Raphael and Multimedia Entertainment, Inc., cross
appealed from the trial court's refusal to admit certain evidence.
(Docket No. 172610). Defendants John Mroz and Steve Bostwick
appealed from the trial court's denial of their motion for sanctions,
contending that the plaintiff's claims against them were frivolous.
(Docket No. 176209). The appeals were consolidated.

The Court of Appeals *held*:

1. The Michigan eavesdropping statutes prohibit third parties
from recording covertly, while it occurs, a private conversation in
which they are not participants and then rebroadcasting that
conversation.

2. The trial court erred in relying on Fourth Amendment cases
involving law enforcement activity to detect criminal behavior in
interpreting the eavesdropping statutes' definition of "private dis-
course" because the statutes specifically exclude from their ambit
law enforcement personnel acting within their lawful authority.

3. The trial court erred in construing the eavesdropping statutes
as allowing a private participant in a conversation to broadcast it
simultaneously to private nonparticipants. The court also erred in
reasoning that any conversation broadcast by a participant is ipso
facto not private.

4. The defendants' conduct violated the eavesdropping statutes as a matter of law. Defendants John Peak and G.T.N., a Michigan corporation, violated the statutes by using a device to eavesdrop on the private conversation without the consent of all the parties thereto. Multimedia, through its employees, violated the statutes by employing G.T.N. and Peak to eavesdrop. The broadcast on the show of a portion of a videotape divulging the conversation violated the statutes.

5. A participant in a private conversation may not permit unilaterally a third party to listen in upon the conversation. Thus, although a participant may expect that the conversation may be repeated by another participant, it remains private within the meaning of the statutes and may not be overheard, recorded, amplified, or transmitted to others without the consent of all participants in the conversation. Although a participant in a conversation may record or repeat the conversation, the participant may not transmit it to third-party nonparticipants.

6. Although the First Amendment protects the publication of truthful information of legitimate public concern, the information may not be obtained unlawfully. Generally applicable laws do not violate the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news. The eavesdropping statutes are generally applicable laws that have only an incidental effect on the defendants' newsgathering and reporting.

7. The trial court did not abuse its discretion in failing to admit the evidence sought to be admitted by defendants Raphael and Multimedia.

8. The trial court properly denied the motion for sanctions brought by Mroz and Bostwick.

9. In Docket No. 172610, the order excluding the evidence must be affirmed and the order denying the plaintiff's motion for a directed verdict must be reversed and the matter must be remanded to the trial court for a hearing regarding damages. In Docket No. 176209, the order denying sanctions must be affirmed.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — EAVESDROPPING.

   The eavesdropping statutes prohibit third parties from recording covertly, while it occurs, a private conversation in which they are not participants and then rebroadcasting that conversation (MCL 750.539 *et seq.*; MSA 28.807 *et seq.*).

2. CRIMINAL LAW — EAVESDROPPING — WORDS AND PHRASES — PRIVATE CONVERSATION.

A conversation that is private, for purposes of the eavesdropping statutes, is intended for or restricted to the use of a particular person or group or class of persons and is intended only for the persons involved (MCL 750.539 *et seq.*; MSA 28.807 *et seq.*).

3. CRIMINAL LAW — EAVESDROPPING — RECORDING OF CONVERSATION.

A participant in a private conversation may record or repeat the conversation without the consent of all the participants, but may not permit the eavesdropping of a third-party nonparticipant or employ a third-party nonparticipant to record the conversation from a transmitting device without the consent of all the participants (MCL 750.539 *et seq.*; MSA 28.807 *et seq.*).

4. CONSTITUTIONAL LAW — FREEDOM OF THE PRESS.

The First Amendment protects the publication of truthful information of legitimate public concern, but the information may not be obtained unlawfully; generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news (US Const, Am I).

*Logeman & Associates, P.C.* (by *Leo E. Januszewski* and *Robert E. Logeman*), for Dorothy J. Dickerson.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Gregory L. Curtner, Michael C. Fayz,* and *Abigail Elias*), for Sally Jessy Raphael and Multimedia Entertainment, Inc.

*Clark & Knight* (by *William E. Clark*) (*Paskin, Nagi & Baxter, P.C.,* by *Jeannette A. Paskin* and *Daniel J. Seymour,* of Counsel), for G.T.N., John Mroz, John Peak, and Steve Bostwick.

Before: CORRIGAN, P.J., and BANDSTRA and W. A. CRANE*, JJ.

CORRIGAN, P. J. This appeal presents issues under the Michigan eavesdropping statutes, MCL 750.539 *et*

* Circuit judge, sitting on the Court of Appeals by assignment.

*seq.*; MSA 28.807 *et seq.*[1] In Docket No. 172610, plaintiff Dorothy Dickerson appeals by right the order denying her motion for a directed verdict. Defendants Multimedia Entertainment, Inc., and Sally Jessy Raphael cross appeal the circuit court's refusal to admit certain evidence. We reverse the order denying a directed verdict and remand for a determination of plaintiff's damages consistent with this opinion. We affirm the exclusion of evidence. In Docket No. 176209, defendants John Mroz and Steve Bostwick appeal by right the denial of their motion for sanctions, contending that plaintiff's claims against them were frivolous. We affirm the denial of sanctions.

> How different life in this state would be if everyone had to expect that their every conversation, their every careless phrase or ill-advised statement could be captured and preserved for all time. Such a life-style is not what is expected nor desired by the members in a free society. [*People v Hall*, 88 Mich App 324, 330; 276 NW2d 897 (1979).]

### I. UNDERLYING FACTS

This case involves the surreptitious, nonconsensual recording, simultaneous transmission, and later broadcast of plaintiff's private conversation with her children by certain defendants, who were not themselves parties to the conversation. In 1988, plaintiff, then a fifty-six-year-old mother of eight and a member of the Church of Scientology for twenty years, began to work as a staff member for the Church of Scientology. In 1991, one of her daughters, Valda Gratias, decided to confront plaintiff about her increasing

---

[1] Plaintiff's allegations of invasion of privacy and intentional infliction of emotional distress are not at issue in this appeal.

involvement with Scientology. Ms. Gratias felt that the Church of Scientology was dominating plaintiff, causing her to sever all ties to her family.

Ms. Gratias intended to appear on the Sally Jessy Raphael television show, which is produced and syndicated by defendant Multimedia. On May 26, 1991, Ms. Gratias and her sister wrote to their mother of their intent to contact the national media to "expose" Scientology.[2] Ms. Gratias then contacted the Sally Jessy Raphael show. Indeed, plaintiff's own diary entry of June 6, 1991, reflected her knowledge that Ms. Gratias would appear on the show. Plaintiff had no inkling, however, that her daughter planned to videotape their conversation for rebroadcast on national television. Ms. Gratias told the show's producer that she wanted to record surreptitiously her conversation with her mother. The producer then contacted defendant G.T.N., a Michigan corporation, and arranged with G.T.N. to record the family's conversation while a concealed microphone worn by Ms. Gratias simultaneously broadcast it.

On Saturday, June 9, 1991, Ms. Gratias, her husband Doug Gratias, and plaintiff's son Eric arrived unan-

---

[2] The national media already had begun reporting on Scientology. For its May 6, 1991, cover story, Time Magazine published an article entitled *"Scientology: the Cult of Greed."* Scientology sued for libel, relying in its complaint on several statements in the article, including:

"[T]he church . . . survives by intimidating members and critics in a Mafia-like manner."

. . . .

" 'Scientology is quite likely the most ruthless, the most classically terroristic . . . cult the country has ever seen.' "

. . . .

"Those who criticize the church—journalists, doctors, lawyers and even judges—often find themselves framed for fictional crimes, beaten up or threatened with death." [*Church of Scientology Int'l v ·Time Warner, Inc,* 806 F Supp 1157, 1162 (SD NY, 1992).]

nounced at the Scientology offices. Plaintiff's daughter was visibly upset and sought a "heart-to-heart" conversation with her mother. Because plaintiff did not wish to disrupt her co-workers and wanted to prevent others from overhearing their discussion, the family went to a nearby public park in Ann Arbor, where they sat on park benches. At the park, plaintiff's children discussed with their mother her income, the stability of her marriage, and her religious beliefs. At no point did defendants or plaintiff's children inform plaintiff that Ms. Gratias was wearing a transmitting device that was broadcasting their conversation surreptitiously to defendants, third-party nonparticipants.

The microphone Ms. Gratias wore transmitted the family's conversation to recording equipment in an unmarked van parked nearby. Defendant G.T.N., through its employee defendant John Peak, simultaneously recorded the audio and video portions of Mrs. Dickerson's conversation with her son, daughter, and son-in-law. Four vignettes from that recording were thereafter replayed on defendant Raphael's television show in July 1991.

In plaintiff's suit, she alleged, among other counts, violation of the Michigan eavesdropping statutes, MCL 750.539 *et seq.*; MSA 28.807 *et seq.* The trial court denied plaintiff's motion for a directed verdict regarding the alleged violation of the statutes. The jury thereafter returned a verdict of no cause of action in favor of defendants.[3]

---

[3] The voluminous record before us suggests that the jury was influenced unduly by numerous peripheral issues and could not easily focus on whether defendants' conduct violated the Michigan eavesdropping statutes.

Preliminarily, this case does not involve the media's First Amendment right to report a story. Nor does this case involve the merits of the Church of Scientology, despite the parties' determined efforts to interject that issue. This case also does not turn on Ms. Gratias' right to record a conversation in which she participated. Rather, this case presents the narrow issue whether the Michigan eavesdropping statutes prohibit third parties from recording covertly, while it occurs, a private conversation in which they are not participants and then rebroadcasting that conversation.

## II. THE EAVESDROPPING STATUTES

This case requires that we interpret the Michigan eavesdropping statutes. Statutory interpretation is a question of law that we review de novo. *Attorney General ex rel Dep't of Natural Resources v Michigan Property & Casualty Guaranty Ass'n*, 218 Mich App 342, 344; 553 NW2d 700 (1996).

In Michigan, unlawful eavesdropping is a felony:

> Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both. [MCL 750.539c; MSA 28.807(3).]

Similarly, divulging unlawfully obtained information is a felony:

> Any person who uses or divulges any information which he knows or reasonably should know was obtained in violation of sections 539b, 539c or 539d is guilty of a felony, pun-

ishable by imprisonment in a state prison not more than 2 years, or by a fine of not more than $2,000.00. [MCL 750.539e; MSA 28.807(5).]

Additionally, Michigan statutory law provides the following civil remedies for eavesdropping violations:

Any parties to any conversation upon which eavesdropping is practiced contrary to this act shall be entitled to the following civil remedies:

(a) An injunction by a court of record prohibiting further eavesdropping.

(b) All actual damages against the person who eavesdrops.

(c) Punitive damages as determined by the court or by a jury. [MCL 750.539h; MSA 28.807(8).]

Under statute, "eavesdropping" is defined as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." MCL 750.539a(2); MSA 28.807(1)(2). The parties do not dispute that defendants overheard, recorded, amplified, and transmitted the discourse of others without the permission of all. Defendants nevertheless argue that the conversation was not "private" and was not the discourse of "others."

When interpreting the eavesdropping statutes, the circuit court relied on Fourth Amendment cases involving law enforcement activity to detect criminal behavior. The eavesdropping statutes, however, specifically exclude from their ambit law enforcement personnel acting within their lawful authority. *In re Jenkins*, 437 Mich 15, 27, n 12; 465 NW2d 317 (1991); MCL 750.539g(a); MSA 28.807(7)(a). The circuit court therefore erred in relying on Fourth Amendment

cases to craft its definition of "private discourse." *Doe v Mills*, 212 Mich App 73, 85-86; 536 NW2d 824 (1995).

Because the eavesdropping statutes do not define the term "private," we resort to the dictionary to ascertain the meaning of the term. *Nelson v Grays*, 209 Mich App 661, 664; 531 NW2d 826 (1995). A conversation that is private is "intended for or restricted to the use of a particular person or group or class of persons . . . [and is] intended only for the persons involved." *Webster's Third New International Dictionary, Unabridged Edition* (1966). Like the common-law right of privacy, the privacy protected by the statute may be waived or lost by clear, unequivocal conduct estopping its assertion. *Doe, supra* at 86-87.

The circuit court next erred in construing the eavesdropping statutes as allowing a private participant in a conversation to broadcast it simultaneously to other private nonparticipants. *People v Collins*, 438 Mich 8; 475 NW2d 684 (1991). While *Collins* permits law enforcement officers to monitor police informants, it does not govern the application of the eavesdropping statutes to persons who are not peace officers or their agents. Our Supreme Court in *Collins* relied on the impossibility of requiring a warrant, the "uniquely difficult task" of the police in enforcing drug laws, the corroboration of the informant's testimony, and the protection of the informant. *Id.* at 37-39. None of those considerations is relevant in interpreting the eavesdropping statutes where the conduct involves merely private actors. *Collins* involves third-party nonparticipant eavesdropping as a technique by government law enforcement authorities to investigate crimes. *Collins* simply is not analogous to the circumstances of this case. As indicated, MCL

750.539g(a); MSA 28.807(7)(a) excepts "peace officers" and their "agents." Further, MCL 750.539a(2); MSA 28.807(1)(2) specifically prohibits amplification or transmission of any part of the private discourse of others, thereby explicitly forbidding to private actors conduct that law enforcement officials may undertake.

Additionally, the circuit court erred in reasoning that any conversation broadcast by a participant is ipso facto not private. Some authorities have concluded that the defendants who overheard transmissions from a cordless telephone, *Tyler v Berodt*, 877 F2d 705 (CA 8, 1989), and a mobile radio telephone, *Edwards v Bardwell*, 632 F Supp 584 (MD La, 1986), were not liable under federal law for eavesdropping. 18 USC 2510 *et seq.* The plaintiffs in those cases, however, knew that they were speaking into devices that would transmit the conversations to listeners, potentially beyond the intended listeners. As *Tyler*, *Edwards*, and their progeny reason, " 'widespread use of cordless telephones and the common knowledge of how they function' " renders unreasonable an expectation of privacy. *Arizona v Duran*, 183 Ariz App 167, 169; 901 P2d 1197 (1995) (citations omitted). In contrast, plaintiff in the instant case did not know of, and did not consent to, any airwave transmission of her words.

Further, to hold that plaintiff's conversation was not private because the surreptitious microphone broadcast it on public airwaves would nullify the legislative intent in our eavesdropping statutes. See, generally, *People v Ward*, 211 Mich App 489, 492; 536 NW2d 270 (1995). Under defendants' construction, anyone with readily available equipment could eaves-

drop with impunity. Defendants essentially seek a ruling that an intimate conversation between a mother and her daughter about family matters is no longer "private" for purposes of the statutes as soon as it is surreptitiously broadcast. We decline to endorse this blatantly untenable predication.

### III. THE DIRECTED VERDICT

Having so construed the statute, we now turn to plaintiff's motion for a directed verdict. In reviewing a motion for a directed verdict, this Court considers the evidence adduced through the time of the motion in a light most favorable to the nonmovant to determine whether a material issue of fact existed. *Haberkorn v Chrysler Corp*, 210 Mich App 354, 364; 533 NW2d 373 (1995). As a matter of law, we conclude that defendants' conduct violated the Michigan eavesdropping statutes. *Skinner v Square D Co*, 445 Mich 153, 165, n 9; 516 NW2d 475 (1994).

The uncontroverted evidence showed that Ms. Gratias intended to confront plaintiff about her involvement with Scientology and then to appear on the Sally Jessy Raphael television show. Ms. Gratias told the show's producer, a Multimedia employee who handled background information and logistical details, that she wanted to tape their confrontation. Both Ms. Gratias and the producer knew that plaintiff would not have consented had they asked her for permission to tape the family's conversation. Plaintiff already had declined invitations to appear on the show. Nonetheless, the producer contacted defendant G.T.N., a local business with the facilities to assist in the secret taping. The show paid for the airfare for Ms. Gratias and other family members from their

homes out of state to Ann Arbor, the location of plaintiff's Scientology office.

Defendant Peak provided Ms. Gratias with a small microphone that she hid under her sweater. The microphone transmitted the conversation between plaintiff, Ms. Gratias, and other family members via FM radio waves. A receiver in G.T.N.'s van, which contained the audio and video recorders, picked up the FM signal and recorded the conversation. The broadcasting microphone was described as essentially a miniature FM radio station, with a range of "possibly" up to one mile "in clear space."

Plaintiff testified that she had expected to have a "very private conversation" with her daughter. Indeed, Ms. Gratias reinforced this expectation by inviting plaintiff for a "heart-to-heart" discussion. As a matter of law on this record, plaintiff did not waive her expectation of privacy, nor did she conduct herself in a manner that would estop its assertion. *Doe, supra* at 86-87. Although the conversation occurred at a picnic table in a public park and an occasional passerby may have walked near the table, the videotape shows that no one lingered to overhear the conversation. Moreover, many minutes of discussion of an intensely personal nature passed without the slightest intrusion. This family's conversation certainly was private for purposes of the Michigan eavesdropping statutes. MCL 750.539c; MSA 28.807(3).

Defendants also contend that anyone with a FM receiver tuned to the particular broadcast frequency could have overheard the conversation. Whether others conceivably could have stumbled onto the FM frequency while tuning the radio is speculative on this record and irrelevant to the interpretation of the stat-

utes. Defendants cannot argue that they inadvertently tuned into the broadcast. Defendants intended that the G.T.N. employee covertly taping in the van would receive the transmission. As a matter of law, therefore, defendants Peak and G.T.N. violated the statutes by using a device to eavesdrop on the private conversation without the consent of all the parties thereto. Multimedia, through its employees, violated the statutes by employing G.T.N. and Peak to eavesdrop. Uncontroverted evidence also showed that a portion of the videotape[4] divulging the conversation was broadcast on the Sally Jessy Raphael television show, produced and distributed by defendant Multimedia. The divulgence violated MCL 750.539e; MSA 28.807(5).

Defendant Raphael testified that she generally received information about the guests on the show but did little to prepare the show's segments. Other Multimedia employees decided to broadcast the tape; Raphael testified that she had no control over that type of decision. Yet Raphael also testified that she had on one occasion exercised discretion over whether a videotape would be broadcast on the show. We cannot ignore Raphael's integral role in her own show. Ultimately she is responsible for the show's content.

Defendants contend that the jury reasonably could have found that the recorded conversation was not the "private discourse of others" because plaintiff had no reason to believe that her family would keep the conversation confidential. In *Sullivan v Gray*, 117

---

[4] Only the audio portion of the tape is at issue in this case. Because the meeting occurred in a public park, plaintiff's video image was open to the public.

Mich App 476, 482; 324 NW2d 58 (1982), this Court observed that "absent a request that discussions be held 'off the record,' it is only reasonable to expect that a conversation may be repeated . . . ." Because the participants may expect a conversation to be repeated, the *Sullivan* Court concluded, a participant may tape-record the participant's own conversation. The participant, however, may not permit unilaterally a third party to listen in upon a conversation. *Id.* at 482.

*Sullivan* remains instructive on this point:

> While a participant may record a conversation with apparent impunity, his sole consent is insufficient to make permissible the eavesdropping of a third party. Thus, while a participant may record a conversation, he apparently may not employ third parties to do so for him. . . . When a third party is unilaterally given permission to listen in upon a conversation, unknown to other participants, those other participants are no longer able to evaluate and form accurate expectations since they are without knowledge of the third party. Therefore, it is not inconsistent to permit a person to record and utilize conversations he participates in yet deny him the right to unilaterally grant that ability to third parties. [*Id.*]

Although defendants vigorously advocate that the above quotations merely are dicta, the *Sullivan* Court properly analyzed the principle that controls this case. We accordingly adopt it as our holding.

Thus, although a participant may expect that a conversation will be repeated, it remains private within the meaning of the statutes and may not be overheard, recorded, amplified, or transmitted to others without the consent of all participants. In other words, Ms. Gratias could have repeated the substance of her conversation with plaintiff. The risk of repeti-

tion does not authorize defendants to secretly listen, broadcast, and tape the private conversation of others. "[I]t is one thing to subject the average citizen to the risk that participants in a conversation with him will subsequently divulge its contents to another, but quite a different matter to foist upon him the risk that unknown third parties may be simultaneously listening in." *United States v White*, 401 US 745, 777; 91 S Ct 1122; 28 L Ed 2d 453 (1971).

Defendants' reliance on an opinion of the Attorney General is misplaced. The Attorney General opined that a private conversation within the meaning of the statutes must be expected to remain confidential. OAG, 1981-1982, No 6100, pp 741, 743 (September 10, 1982). The Attorney General offered the opinion in response to the question whether a child's parent had a right to tape-record a statutorily mandated committee meeting designed to formulate a plan for the child's education. As the Attorney General stated: "A legally required meeting of representatives of a public agency to discuss provision of legally required programs and services is not a private discourse or conversation." *Id*. The opinion of the Attorney General clearly is based on facts distinguishable from the instant case, where plaintiff engaged in a private conversation with family members.

Defendants next aver that the conversation was not private because plaintiff later discussed with others certain facts from that conversation. Defendants cite no case law or other authority for this proposition; the argument effectively is abandoned. *In re Powers*, 208 Mich App 582, 588; 528 NW2d 799 (1995).

Defendants finally argue that the conversation recorded in the G.T.N. van was not a conversation "of

others." This argument is based on an erroneous application of *Collins, supra.* We reiterate that although a participant in a conversation may record or repeat a conversation, the participant may not transmit it. *Sullivan, supra* at 482; MCL 750.539a; MSA 28.807(1). Similarly, defendants G.T.N. and Peak argue that because they made the recording at the request of Ms. Gratias, a participant in the conversation, they did no wrong. These defendants misapprehend the Michigan statutes. Even if they acted as agents of a participant in the conversation, they nonetheless used a device to eavesdrop "upon the conversation without the consent of *all* parties thereto," contrary to MCL 750.539c; MSA 28.807(3).

Defendants Multimedia and Raphael assert that the Dickerson family's First Amendment right to tell their story, and defendants' First Amendment right to provide a forum for that story, protect them from liability under the Michigan eavesdropping statutes. We disagree. While the First Amendment protects the publication of truthful information of legitimate public concern, *Anonsen v Donahue*, 857 SW2d 700 (Tex App, 1993), the information may not be obtained unlawfully: "[G]enerally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news." *Cohen v Cowles Media Co*, 501 US 663, 669; 111 S Ct 2513; 115 L Ed 2d 586 (1991). The Michigan eavesdropping statutes are generally applicable laws that have only an incidental effect on defendants' newsgathering and reporting. Although the content of the conversation could have been repeated by Ms. Gratias, *Sullivan, supra*, defendants' act of surreptitiously broadcasting

and recording the conversation and divulging it violated our state statutes. "[T]here are significant differences between recording a conversation and simultaneously transmitting it to a third party." *Hall, supra* at 334, n 3.

Multimedia defendants also point out that the statutes impose liability only on those who "knowingly" violate the statutes. Because defendants consulted attorneys who advised them that their actions would be permissible, they argue that they did not "knowingly" commit a violation. Defendants cite no authority for this proposition; therefore, they effectively have abandoned it. *In re Powers, supra* at 588. Moreover, despite defendants' assertions, the record reflects that one attorney who opined that the taping would not violate the statutes rendered that opinion only after the taping had occurred. The other attorney simply advised defendants to tape conversations that occur in a public place. We do not understand that advice to relate to the conduct or statutes at issue. A private conversation may occur within the sight but not the hearing of others. See, e.g., *People v Camak*, 5 Mich App 655, 658-660; 147 NW2d 746 (1967).

### IV. ADMISSION OF EXHIBITS

As cross-appellants, Multimedia defendants assert that the court abused its discretion in failing to admit certain exhibits. This issue may be relevant with respect to the damages hearing following remand. We review evidentiary decisions pertaining to relevance for an abuse of discretion. *Solomon v Shuell*, 435 Mich 104, 114; 457 NW2d 669 (1990); *In re Flury Estate*, 218 Mich App 211, 217; 554 NW2d 39 (1996). In the instant case, the trial court did not abuse its

discretion. The exhibits sought to be introduced may have been relevant to the practices or beliefs of Scientology, but were not reflective of plaintiff's knowledge or belief. MRE 401, 403.

### V. SANCTIONS

In Docket No. 176209, defendants Mroz and Bostwick[5] argue that the trial court erred in denying their motion for sanctions, claiming that plaintiff's issues were frivolous. MCL 600.2591; MSA 27A.2591. We review the trial court's findings for clear error. *Avery v Demetropoulos*, 209 Mich App 500, 503; 531 NW2d 720 (1995). The trial court based its decision on deposition testimony that these defendants were involved in the conduct claimed by plaintiff to be in violation of the statute. Additionally, our disposition of the above issues reflects that plaintiff's claims were not frivolous. The court did not clearly err in its findings.

In summary, we affirm the order denying sanctions in Docket No. 176209. With respect to Docket No. 172610, the testimony and evidence showed that Ms. Gratias contacted representatives of Multimedia who procured defendants G.T.N. and Peak to use a device to eavesdrop upon the private discourse of plaintiff, thereby violating MCL 750.539c; MSA 28.807(3). The record also shows that defendants Multimedia and Raphael divulged information obtained in violation of MCL 750.539e; MSA 28.807(5). We reverse the denial of plaintiff's motion for a directed verdict and remand to the trial court for a hearing on damages. We do not retain jurisdiction.

---

[5] Defendants John Mroz and Steve Bostwick also are G.T.N. employees.