593 N.W.2d 680 (1999)
234 Mich. App. 117
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Brian James STONE, Defendant-Appellee.
Docket No. 210755.
Court of Appeals of Michigan.
Submitted January 6, 1999, at Detroit.
Decided February 16, 1999, at 9:00 a.m.
Released for Publication May 5, 1999.
*681 Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, Elwood L. Brown, Prosecuting Attorney, and Timothy K. Morris, Assistant Prosecuting Attorney, for the people.
Lord & Guilliat (by Kenneth M. Lord), Port Huron, for the defendant.
Before HOEKSTRA, P.J., and DOCTOROFF and O'CONNELL, JJ.
DOCTOROFF, J.
Defendant was charged with eavesdropping on a private conversation, M.C.L. § 750.539c; MSA 28.807(3), and divulging unlawfully obtained information, M.C.L. § 750.539e; MSA 28.807(5). After defendant was bound over for trial on the charges, he filed a motion to quash the information. The trial court granted the motion on the basis that the intercepted conversations did not constitute "private conversations" within the meaning of the eavesdropping statute because the conversations were conducted with the use of a cordless telephone.[1] The prosecutor now appeals as of right from the trial court's order quashing the information. We reverse.
Defendant and his wife, Joanne Stone, lived next door to Ronald Pavlik during their marriage. When defendant and Joanne commenced divorce proceedings, defendant moved out of the home, but Joanne remained. During the pendency of the divorce, Pavlik informed defendant that he owned a police scanner and that he could use the scanner to intercept calls made by Joanne on her cordless telephone.[2] Defendant told Pavlik to "keep on top of things and to let him know if anything bad was going to happen." Joanne became suspicious when, on numerous occasions, she found that other people had information about her that they should not have had. On one occasion, a friend of the court custody investigator told Joanne that defendant had told the investigator that defendant thought that Joanne was pregnant, that she planned to move out of the state, and that defendant had a tape recording to that effect. According to Joanne, the only place defendant could have obtained that information was from Pavlik's recordings of her telephone conversations. Joanne contacted the police. After interviewing several people, the police obtained a *682 search warrant and found approximately fifteen cassette tapes at the homes of defendant and Pavlik. The tapes contained recordings of telephone conversations between Joanne and her family members, friends, and attorney. Pavlik admitted that he had used his police scanner to intercept Joanne's calls from her cordless telephone.
The prosecution argues that the trial court erred in determining that, because Joanne Stone was using a cordless telephone, her conversations were not "private conversations," and, thus, their interception did not violate M.C.L. § 750.539c; MSA 28.807(3). We agree. Questions of statutory interpretation are questions of law, which we review de novo. People v. Denio, 454 Mich. 691, 698, 564 N.W.2d 13 (1997).
MCL 750.539c; MSA 28.807(3) provides:
Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.
MCL 750.539a(2); MSA 28.807(1)(2) defines the term "eavesdrop" as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse."
Whether conversations conducted with the use of a cordless telephone are protected by the eavesdropping statute is a question of first impression in Michigan. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. People v. Stanaway, 446 Mich. 643, 658, 521 N.W.2d 557 (1994). The first criterion in determining intent is the specific language of the statute. People v. Pitts, 216 Mich.App. 229, 232, 548 N.W.2d 688 (1996). The Legislature is presumed to have intended the meaning it plainly expressed. People v. Roseburgh, 215 Mich.App. 237, 239, 545 N.W.2d 14 (1996).
First, we disagree with the trial court's finding that Joanne Stone's conversations were not protected by the eavesdropping statute because "a conversation does not include the reconstruction of a conversation from the interception of radio waves from a cordless telephone."
The trial court's finding that the interception of the radio waves produced by a cordless telephone is not the interception of a "conversation" was based on the decision of the United States Sixth Circuit Court of Appeals in McKamey v. Roach, 55 F.3d 1236 (C.A.6, 1995), construing title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, 18 USC 2510-2521 (1988). The federal statute at issue prohibited the nonconsensual interception of wire, oral, and electronic communication and the intentional disclosure or use of the contents of such communication with knowledge that the information was obtained through illegal interception. 18 USC 2511(1)(a), (c), and (d); McKamey, supra at 1238. At the time the conversations in McKamey were intercepted, the federal statute expressly exempted the radio portion of a cordless telephone conversation from the definitions of wire and electronic communications. Id. at 1238.[3] Therefore, if a cordless telephone conversation were to fall within the protection of the federal statute, it would have to be included within the definition of an oral communication. The statute defined an oral communication as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 USC 2510(2); McKamey, supra at 1239. The court reasoned that, because the defendants did not intercept the plaintiffs' actual utterances, but intercepted a radio signal produced by a cordless telephone used by one of the plaintiffs, it was actually a reproduction of the conversation produced by the scanner that was recorded. *683 Id. at 1239. Accordingly, the court concluded that the plain language of the statute did not include cordless telephone communications within the definition of "oral communication." Id.
In contrast to the federal statute, the Michigan eavesdropping statute does not differentiate between wire, electronic, and oral communications. Rather, the statute protects "private conversations." Because the term "conversation" is not defined in the statute, we refer to a dictionary for its definition. People v. Lee, 447 Mich. 552, 558, 526 N.W.2d 882 (1994). Random House Webster's College Dictionary (1997) defines a "conversation" as an "informal spoken interchange of thoughts, information, etc.; oral communication between people." According to the Michigan eavesdropping statute's own definition of eavesdropping, the interception of "any part of the private discourse of others without the permission of all persons engaged in the discourse"[4] is prohibited. MCL 750.539a(2); MSA 28.807(1)(2), M.C.L. § 750.539c; MSA 28.807(3) (emphasis added). Keeping in mind that the intent of the Legislature in enacting the eavesdropping statute was to protect an individual's right to privacy, Navarra v. Bache Halsey Stuart Shields Inc., 510 F.Supp. 831, 835 (E.D.Mich., 1981), we read that language broadly to include the interception of radio waves generated by a cordless telephone conversation. In this respect, M.C.L. § 750.539c; MSA 28.807(3) and M.C.L. § 750.539a(2); MSA 28.807(1)(2) offer more protection for an individual's right to privacy than does the federal statute. Accordingly, we reject the trial court's finding that a cordless telephone conversation is not a "conversation" for the purposes of the eavesdropping statute.
We further believe that the trial court erred in determining that, because Joanne Stone's conversations were conducted with the use of a cordless telephone, the conversations were not private. The statutes at issue do not define the term "private." However, in the context of the eavesdropping statute, this Court has held that a conversation is "private" if it is "`intended for or restricted to the use of a particular person or group or class of persons ... [and is] intended only for the persons involved.'" Dickerson v. Raphael, 222 Mich.App. 185, 193, 564 N.W.2d 85 (1997), quoting Webster's Third New International Dictionary, Unabridged Edition (1966). Here, the circumstances indicated that Joanne Stone intended her cordless telephone conversations to be private. The conversations were conducted in the privacy of her own home, and she testified at the preliminary examination that she intended that they be heard only by the persons with whom she was conversing. Therefore, the conversations were private for the purposes of the eavesdropping statutes.
The trial court reasoned that Joanne Stone could not have had a reasonable expectation of privacy in the cordless telephone conversations because of the ease of interception of such conversations. However, the trial court erred in relying on the concept of a "reasonable expectation of privacy." The concept of a "reasonable expectation of privacy," which arose in the context of the Fourth Amendment, is not applicable here, where the statutes at issue focus on conduct between private individuals and expressly exclude law enforcement officers acting within the scope of their authority. MCL 750.539g(a); MSA 28.807(7)(a); Dickerson, supra at 192-193, 564 N.W.2d 85. Rather, whether a conversation was private should depend on whether the conversation was "`intended for or restricted to the use of a particular person or group or class of persons...[and is] intended only for the persons involved.'" Id. at 193, 564 N.W.2d 85 (citation omitted).
Furthermore, we disagree with the trial court's reasoning that the cordless telephone conversations were not private because of the ease of their interception. Such reasoning would erode the right to privacy as technology advanced to create simpler ways to intercept private communications of all types. We agree with the statement of the Ohio Supreme Court that "[f]undamental rights should not be sacrificed on the altar of *684 advancing technology." Ohio v. Bidinost, 71 Ohio St.3d 449, 462, 644 N.E.2d 318 (1994). It is true that the right to privacy may be waived by clear and unequivocal conduct estopping the assertion of the right. Dickerson, supra at 193, 564 N.W.2d 85; Doe v. Mills, 212 Mich.App. 73, 86-87, 536 N.W.2d 824 (1995). However, we do not believe that Joanne Stone's use of a cordless telephone clearly and unequivocally waived her privacy rights. The preliminary examination testimony indicated that Joanne believed her cordless telephone conversations to be just as private as if she had used a corded land-line telephone.[5] Joanne Stone was conducting a conversation on a telephone in the privacy of her own home. Pavlik did not unintentionally or accidentally pick up Joanne Stone's conversations on the scanner, but targeted and intentionally monitored Joanne Stone's conversations with the scanner. The fact that it was easy for him to do so is irrelevant. The type of conduct that occurred in the instant case is exactly the type of conduct the eavesdropping statute was intended to discourage, and which we will not condone. Accordingly, on the basis of the plain language of the statute, we hold that the cordless telephone conversations intercepted by Pavlik were "private conversations" for the purposes of M.C.L. § 750.539c; MSA 28.807(3).[6] We, therefore, reverse the trial court's order granting defendant's motion to quash the information.
Reversed.
HOEKSTRA, P.J., concurred.
O'CONNELL, J. (concurring in part and dissenting in part).
I generally concur with the majority's analysis of this case, but I would limit the scope of today's decision to the recording of cordless telephone conversations. Although I agree that the use of a scanner to record private cordless telephone conversations violates the statute in question, I feel that the question whether merely listening to these conversations as they are monitored by a scanner is also a violation of the statute is better left for another day.[1]
At issue is whether using a device to record private cordless telephone conversations is a violation of Michigan's eavesdropping statute. MCL 750.539a(2); MSA 28.807(1)(2) defines "eavesdropping" as "to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." As the majority opinion notes, Pavlik, allegedly acting with the encouragement of defendant and for his benefit, used his police scanner to intercept and record calls from Joanne Stone's cordless telephone. Defendant's argument that these conversations were not intended to be private is without merit.[2] That they were broadcast over a *685 cordless telephone does not change the nature of the communications.[3]
I concur with the majority's conclusion that the conversations in question were private discourse as defined by the statute.[4] To the extent that the trial court concluded that the recording of cordless telephone conversations through use of a scanner was not a violation of the statute, I disagree, and in this regard concur with the reasoning and analysis of the majority opinion. I would vacate the order of the trial court and remand this case for a trial. I would direct the trial court to limit the inquiry on remand to illegal recording of the cordless telephone conversations.[5]
NOTES
[1] An understanding of the operation of a cordless telephone is required for the resolution of the issue presented in this case. In People v. Fata, 159 A.D.2d 180, 183, 559 N.Y.S.2d 348 (1990), the New York Supreme Court, Appellate Division, explained:

Undoubtedly those who enjoy the convenience of a cordless telephone suffer a certain loss of privacy in their communications. A cordless telephone consists of a base unit, which is connected to an ordinary telephone wire, and a handheld unit. For an outgoing call, the handheld unit transmits the speaker's voice over radio waves to the base unit. Incoming calls over the telephone wire are transmitted from the base unit to the handheld unit by radio waves. Such radio signals can pass through almost any material and ordinarily have a range of about 50 feet. Because the telephones operate on common radio frequencies, the conversations can be monitored with a standard radio or even a walkie-talkie. If two cordless telephones are physically close enough, a call to one of them could cause the other telephone to ring.
[2] Joanne Stone is virtually blind. She testified that it was necessary for her to use the cordless telephone so that she could use an enlarger when she conducted business on the telephone.
[3] The provisions in 18 USC 2510 expressly excluding the radio portion of a cordless telephone communication from the protection of the Electronic Communications Privacy Act were deleted in 1994 by PL 103-414, § 202(a)(1).
[4] The dictionary defines the term "discourse" to include "conversation." Random House Webster's College Dictionary (1997).
[5] The legislative history of the 1994 amendment of 18 USC 2510, which deleted the express exclusion of the radio portion of a cordless telephone communication from the protection of the federal Electronic Communications Privacy Act, noted that "`[t]he cordless phone, far from being a novelty item used only at "poolside," has become ubiquitous..[.] More and more communications are being carried out by people [using cordless phones] in private, in their homes and offices, with an expectation that such calls are just like any other phone call.'" HR Rep No 103-827, 103d Cong, 2d Sess (1994) reprinted in 1994 U.S.Code Cong & Ad News 3489, 3497 (citation omitted).
[6] Numerous other jurisdictions have construed their state eavesdropping statutes to prohibit the intentional interception of cordless telephone conversations. See State v. Faford, 128 Wash.2d 476, 484-486, 910 P.2d 447 (1996); State v. Mozo, 655 So.2d 1115, 1116 (Fla., 1995); Bidinost, supra at 461-463, 644 N.E.2d 318; Fata, n. 1supra.
[1] My reluctance to join in the majority opinion stems in part from my uncertainty concerning precisely when in the course of Pavlik's conduct he began "eavesdropping" for purposes of the statute. Was it at the moment that he turned his scanner on, the moment a voice came over the system and the system began to record, or at the moment when Pavlik actually listened to the recording? MCL 750.539c; MSA 28.807(3) concerns "wilfully" using a device to eavesdrop, indicating that the inadvertent interception of private conversations may be beyond the scope of the statute.
[2] The police found approximately fifteen cassette tapes at the homes of defendant and Pavlik that included private conversations between Joanne Stone and her friends, family, and attorney. This abundance of recorded material demonstrates the persistent and intentional nature of the eavesdropping and the egregious nature of the intrusions.
[3] The central issue addressed in the briefs concerns the term "private discourse." It is beyond question that Joanne Stone's conversations with her doctor or her attorney constitute private discourse within the meaning of the eavesdropping statute. The parties have neither briefed nor argued the constitutionality of the eavesdropping statute as it applies to individuals who use a scanner to listen to cordless telephone conversations. Thus, the question of the constitutionality of this statute as applied to listeners and recorders is not before this Court and therefore not appropriately addressed here.
[4] Today there exist numerous affordable devices of sufficient sophistication as to allow almost any conversation (private discourse) to be intercepted and recorded. The ease, method, or process by which a conversation can be intercepted should not affect this Court's determination whether a conversation is private discourse.
[5] I express no opinion concerning whether merely listening to these conversations violates the statute.