Per Curiam.
The prosecutor appeals as of right from the trial court’s order quashing an information charging defendant with escape from jail while awaiting arraignment on a felony, MCL 750.197(2); MSA 28.394(2). The trial court ruled that the statute did not apply because defendant “was in jail waiting to be booked which is not the same as awaiting examination, trial, arraignment or sentence for a felony.” We reverse and hold that an individual may be charged under the jail escape statute where the escape occurs before the individual has been formally processed by jail authorities.
Defendant was taken to the Saginaw County Jail following his arrest on an outstanding felony warrant. Upon arrival, the police transferred custody of defendant to jail intake officers, who placed defendant in a holding cell. The holding cell was located near the garage-type doors through which police vehicles enter and leave the jail. Before the intake officers could process defendant (i.e., photograph, fingeiprint, search, and take information from him) he asked to use the restroom. When a security guard opened the cell door, defendant escaped by running through the open garage-type doors in the “sally port” section of the jail.
The prosecution argues that the trial court erred in ruling that individuals who have been arrested on a felony warrant and placed in a holding cell in a jail are immune from prosecution under MCL 750.197(2); MSA 28.394(2) until they are formally processed. MCL 750.197(2); MSA 28.394(2) provides:
*261 A person lawfully imprisoned in a jail or place of confinement established by law, awaiting examination, trial, arraignment, or sentence for a felony; or after sentence for a felony awaiting or during transfer to or from a prison, who breaks the jail or place of confinement and escapes; who breaks the jail, although no escape is actually made; who escapes; who leaves the jail or place of confinement without being discharged from the jail or place of confinement by due process of law; who breaks or escapes while in or being transferred to or from a courtroom or courthouse, or a place where court is being held; or who attempts to break or escape from the jail or place of confinement is guilty of a felony. A term of imprisonment imposed for a violation of this subsection shall begin to run at the expiration of any term of imprisonment imposed for the offense for which the person was imprisoned at the time of the violation of this subsection. [Emphasis added.]
In People v Fox (After Remand), 232 Mich App 541, 556-557; 591 NW2d 384 (1998), this Court held that a conviction under this statute requires proof that “(1) the defendant was lawfully imprisoned in a jail or other place of confinement while awaiting legal proceedings or transfer to prison and (2) the defendant broke or attempted to break the jail or place of confinement, regardless of whether an escape was actually made.”
The interpretation and application of a statute is a question of law that is reviewed de novo. People v Webb, 458 Mich 265, 274; 580 NW2d 884 (1998). The primary purpose of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. Id. at 273-274. The first criterion in determining intent is the specific language of the statute. People v Stone, 234 Mich App 117, 121; 593 NW2d 680 (1999). If statutory language is clear and unambiguous, judicial construction is precluded. People v Pitts, *262 216 Mich App 229, 232; 548 NW2d 688 (1996). Statutory language is clear and unambiguous when reasonable minds could not differ with regard to its meaning. People v Armstrong, 212 Mich App 121, 123; 536 NW2d 789 (1995). Provisions of the Penal Code are construed according to the fair import of their terms to effect the purpose of the statute. MCL 750.2; MSA 28.192; People v Morris, 450 Mich 316, 327; 537 NW2d 842 (1995); Armstrong, supra at 127.
The clear and unambiguous language of MCL 750.197(2); MSA 28.394(2) compels us to conclude that defendant was “lawfully imprisoned in a jail” when he escaped. We first note that the statute defines “jail” as “a facility that is operated by a local unit of government for the detention of persons charged with, or convicted of, criminal offenses or ordinance violations, or persons found guilty of civil or criminal contempt.” MCL 750.197(4); MSA 28.394(4). Similarly, although not defined by the statute, “imprison” means “to put in a prison; to put in a place of confinement. To confine a person, or restrain his liberty in any way.” Black’s Law Dictionary (6th ed); see Armstrong, supra at 127; People v Tracy, 186 Mich App 171, 176; 463 NW2d 457 (1990) (where a word is undefined by statute, it is to be construed according to its common and approved usage).
In the present case, defendant was arrested on a felony warrant, processed at the Saginaw Police Department, and transported to the Saginaw County Jail. After the police transferred custody of defendant to jail officials and left, the offipials confined defendant in a holding cell inside the jail. As evidenced by the fact that defendant had to ask permission to be let out of the holding cell to use the restroom, he was *263 confined in the jail and not free to leave. Under these circumstances, it cannot reasonably be disputed that defendant was “imprisoned in a jail or place of confinement” when he escaped from the jail.
Given this conclusion, we must determine whether defendant was “lawfully” confined in the jail before he escaped. Because this is an issue of first impression in Michigan, we initially look to authority from other jurisdictions for guidance. Though we have found no case directly on point, two decisions of the California Court of Appeals, Terzian v Ventura Co, 24 Cal App 4th 78; 28 Cal Rptr 2d 809 (1994), and Reed v Santa Cruz Co, 37 Cal App 4th 1274; 44 Cal Rptr 2d 149 (1995), are instructive. The issue in both cases was whether an arrestee could be deemed a “prisoner” within the meaning of a California statute that precluded governmental liability for injuries to prisoners. The plaintiffs argued that an arrestee could not be considered a prisoner under the statute until all the formal booking procedures had been completed. The California Court of Appeals rejected this argument, reasoning that it is the confinement in a jail, not necessarily the completion of formal booking procedures, that establishes an arrestee’s status as a “prisoner” within the meaning of the statute. Specifically, in Terzian the court reasoned:
[The decedent] was photographed and fingerprinted but the records did not show the exact time these procedures were completed. Nonetheless, it is clear from the record that once the arresting officer had turned [the decedent] over to the jail deputies, [the decedent] was confined to jail under legal process and was not free to leave of his own accord. Under appellants’ version ... , an arrestee could be incarcerated for an extended period, but because, due to some unforeseen circumstance he or she was not finger *264 printed or photographed or not all supplemental booking was completed until a later time, the person would not be “confined to a correctional facility under the authority of law” until all those acts were completed even though the person was not free to leave. Such a strained interpretation of “booking” is unreasonable. [Terzian, supra at 86-87 (citation omitted).]
Similarly, in Reed the court stated:
The undisputed facts established that plaintiff was arrested under warrant, taken to jail and confined in a holding room. It is simply impossible to construe these facts in any way other than to find that plaintiff was lawfully confined as part of the penal process at the time of the alleged assault. Plaintiff did not challenge the lawfulness of her arrest, and it is indisputable that confinement in a holding room after arrest pursuant to a warrant is “part of the penal processes.” [Reed, supra at 1277.]
We find the logic employed in these cases—that persons are imprisoned at the time they are transferred to the custody of jail personnel and physically placed in a cell within a jail—persuasive and applicable to the present case. Unlike the California courts, however, we need not focus on the issue whether some part of the booking process had been completed. In our view, the language employed in subsection 197(2) indicates that the Legislature was concerned with the place or type of confinement, not the technical procedures associated with the booking process. This conclusion is supported by the Legislature’s decision to use the term “lawful” instead of “legal.” The term “lawful” is defined as “warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law.” Black’s Law Dictionary, supra. The term “legal” *265 on the other hand, pertains to technical compliance with the forms and usages of law. Black’s Law Dictionary, supra, distinguishes between these terms as follows:
The principal distinction between the terms “lawful” and “legal” is that the former contemplates the substance of law, the latter the form of law. To say of an act that it is “lawful” implies that it is authorized, sanctioned, or at any rate not forbidden, by law. To say that it is “legal” implies that it is done or performed in accordance with the forms and usages of law, or in a technical manner.
This common use distinction between the words “lawful” and “legal” establishes that the legislative focus was on whether an arrestee was imprisoned and whether the imprisonment was consistent with the law, not whether the jail had completed the administrative procedures needed to show that the arrestee had been legally processed. Absent some legislative directive in the statute, we decline to establish which, if any, processing procedures must be completed before one may be deemed “lawfully” imprisoned within the meaning of the statue. Thus, where defendant has made no claim that his imprisonment violated the law, we reject the argument that he was not “lawfully” imprisoned in a jail when he escaped simply because jail authorities had neither commenced nor completed certain ministerial procedures. A contrary ruling would contravene the purpose of the statute, which is to “maintain[] the security of jails, thereby protecting the public from accused persons likely to be dangerous, as well as ensuring that accused persons appear at legal proceedings and convicted persons remain confined.” Fox, supra at 557.
*266 The final step in our analysis requires us to determine whether defendant was “awaiting examination, trial, arraignment, or sentence for a felony” when he escaped from jail. The prosecutor argues that the trial court erred in concluding that MCL 750.197(2); MSA 28.394(2) did not apply because defendant “was in jail waiting to be booked which is not the same as awaiting examination, trial, arraignment or sentence for a felony.” We agree with the prosecutor. Defendant was not placed in jail following his arrest on felony charges simply to be booked. Rather, he was being held in jail pending the commencement of the criminal process. Because this process logically includes examination, arraignment, and possibly trial, we conclude that defendant was in jail awaiting legal proceedings within the meaning of the statute at the time of his escape. See Fox, supra at 556-557.
Reversed.