THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER FATA, Appellant.

Second Department, July 18, 1990

## APPEARANCES OF COUNSEL

*Ronald L. Kuby* and *William M. Kunstler (Ronald L. Kuby* of counsel), for appellant.

*Kenneth Gribetz, District Attorney (Deborah Wolikow Loewenberg* of counsel), for respondent.

## OPINION OF THE COURT

KUNZEMAN, J. P.

This appeal raises the question of whether cordless telephone conversations, which are partially broadcasted over ordinary radio waves, are nevertheless protected from warrantless interception by law enforcement officials. Although we conclude that the intentional interception of such conversations is prohibited by the State eavesdropping statute *(see,* Penal Law §§ 250.00, 250.05), our resolution of this issue does not require suppression of the evidence obtained against the defendant in this case. Accordingly, we affirm the judgments of conviction.

In September 1986, an off-duty New York City police officer residing in Garnerville overheard the conversations of third parties over his personal cordless telephone. From the content of the conversations, he determined that they were emanating from a nearby apartment, which was occupied by the defendant. The officer interpreted certain words that he overheard

to be indicative of narcotics-related activities. He tape-recorded portions of four conversations and gave the tapes to the Rockland County Narcotics Task Force (hereinafter the Task Force). The defendant acknowledges on appeal that the intercepted conversations originated from a cordless telephone in his apartment.

In the two weeks following the interception of these conversations, the police officer provided the Task Force with the license plate numbers of vehicles he observed parked outside of the defendant's residence. Upon being contacted by the Task Force, he reported frequent vehicular activity at the location. The officer did not overhear any further conversations originating from the defendant's residence over his cordless telephone with the exception of one instance in which someone said: "Did you hear that, don't say anything over the phone". Throughout 1987, the Task Force made intermittent "spot checks" of the defendant's residence and obtained the criminal histories of the owners of the vehicles frequently parked at that location. In June 1987, the Task Force was contacted by the Stony Point Police Department and advised that a woman named Jill was willing to come forward with information allegedly concerning the defendant's narcotics-related activity. Jill was subsequently interviewed by the Task Force and related that her husband had purchased cocaine from the defendant for over a year, that she had been to the defendant's apartment in Garnerville on several occasions, and that she had seen drug paraphernalia there. A pen register was installed on the defendant's telephone in September 1987, which revealed telephone calls to persons known to be involved in narcotics activity. In October 1987, a bag of garbage was retrieved from the curb in front of the defendant's residence containing plastic bags having marihuana and cocaine residue and papers with notations indicative of narcotics-related activity.

Shortly thereafter, the Task Force applied for an eavesdropping warrant in order to intercept conversations over a telephone located at the defendant's Garnerville residence. The affidavits in support of the warrant application relied, in part, on the cordless telephone conversations taped in September 1986 by the New York City police officer. Based on information obtained as a result of the initial eavesdropping warrant, the Task Force applied for and was granted eavesdropping warrants for a telephone used by the defendant at a location in New City and for two telephones at the residence of a

codefendant, Dominick Caponigro. The defendant was arrested in December 1987, following execution of a search warrant which netted a quantity of cocaine. The defendant was charged with various conspiracy and narcotics offenses in three separate indictments. He moved to suppress the evidence obtained from the eavesdropping warrants on the ground, *inter alia,* that it was the fruit of the illegal interception of the cordless telephone conversations. The suppression court denied his motion, without a hearing, finding that cordless telephone conversations were not protected by either the Federal eavesdropping statute (Omnibus Crime Control and Safe Streets Act of 1968 tit III, 18 USC § 2510 *et seq.)* or the State eavesdropping statute (Penal Law §§ 250.00, 250.05) *(see, People v Fata,* 139 Misc 2d 979). The court reasoned that "those who use cordless telephones do so at their peril. These telephones are FM transceivers and may be easily monitored by anyone in the area who possesses an FM radio receiver, including another cordless telephone" *(People v Fata, supra,* at 982). Following the denial of that branch of his motion which was to suppress evidence, the defendant pleaded guilty under the three indictments.

Undoubtedly those who enjoy the convenience of a cordless telephone suffer a certain loss of privacy in their communications. A cordless telephone consists of a base unit, which is connected to an ordinary telephone wire, and a handheld unit. For an outgoing call, the handheld unit transmits the speaker's voice over radio waves to the base unit. Incoming calls over the telephone wire are transmitted from the base unit to the handheld unit by radio waves. Such radio signals can pass through almost any material and ordinarily have a range of about 50 feet. Because the telephones operate on common radio frequencies, the conversations can be monitored with a standard radio or even a walkie-talkie. If two cordless telephones are physically close enough, a call to one of them could cause the other telephone to ring *(see generally, State v Howard,* 235 Kan 236, 679 P2d 197; Note, *Don't Touch that Dial: Radio Listening Under the Electronic Communications Privacy Act of 1986,* 63 NYU L Rev 416 [1988]). Under a rule promulgated by the Federal Communications Commission (47 CFR 15.236), in effect in 1987, manufacturers were required to place a notice on the base unit of such telephones to the effect that the "[p]rivacy of communications may not be ensured while using this phone".

■ The suppression court determined that Federal law does

not prohibit the warrantless interception of cordless telephone conversations, and, considering the case law which has developed on this issue, we agree. The Federal eavesdropping statute, title III of the Omnibus Crime Control and Safe Streets Act (18 USC § 2510 *et seq.*), as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of wire and oral communications and provides procedures for wiretapping by law enforcement officials. In defining a "wire communication", the statute specifically excludes "the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit" (18 USC § 2510 [1]). Therefore, if cordless telephone conversations are to be protected under the Federal statute, they must fall within the definition of an "oral communication". The statute defines an oral communication, in relevant part, as one which is "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation" (18 USC § 2510 [2]).

Courts in other jurisdictions which have addressed the issue of the interception of cordless telephone conversations have concluded that such conversations are not protected "oral communications" under the Federal statute because the speaker has no reasonable expectation of privacy *(see, e.g., Tyler v Berodt,* 877 F2d 705 [8th Cir 1989], *cert denied* — US —, 110 S Ct 723 [cordless telephone conversation overheard on a neighbor's cordless telephone four blocks away]; *State v Smith,* 149 Wis 2d 89, 438 NW2d 571 [defendant's neighbor overheard his cordless telephone conversations using a radio scanner]; *State v Howard,* 235 Kan 236, 679 P2d 197, *supra* [defendant's cordless telephone conversations overheard with a neighbor's AM/FM radio]).

■ Although we do not disagree with the interpretation of the Federal eavesdropping statute by courts in the aforementioned jurisdictions, we conclude that a different result is required under New York law. The Federal statute represents the minimum constitutional criteria for electronic surveillance and does not preclude the States from enacting more stringent standards *(see, People v Shapiro,* 50 NY2d 747). Protection against the "unreasonable interception" of telephone conversations is embodied in article I, § 12, of the NY Constitution. More specifically, the Penal Law makes eavesdropping a felony. Eavesdropping is defined by Penal Law § 250.00 to include "wiretapping" and "mechanical overhearing of a conver-

sation". Wiretapping is "the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment" (Penal Law § 250.00 [1]). Mechanical overhearing of a conversation is "the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment" (Penal Law § 250.00 [2]). While it can be argued that "any instrument, device or equipment" (Penal Law § 250.00 [2]) should not be interpreted to include an ordinary radio or cordless telephone by means of which a cordless telephone conversation is overheard, such an interpretation is contrary to the plain meaning of the statute and would exclude cordless telephone conversations held in the privacy of one's own home from protection under the statute. The definition of eavesdropping set forth in Penal Law § 250.00 is incorporated in CPL article 700, which governs eavesdropping applications by law enforcement personnel. If cordless telephone conversations were to be excluded from the statutory definition of eavesdropping, law enforcement officials would be permitted to engage in pervasive monitoring of cordless telephone conversations without the judicial oversight applicable to other forms of eavesdropping. Furthermore, we note that the recent amendment of Penal Law § 250.00 (L 1988, ch 744), although not applicable to suppression orders issued prior to December 22, 1988, indicates that the Legislature intended to provide greater protection for the privacy of telephone communications than that available under the Federal eavesdropping statute. Penal Law § 250.00, as amended, defines "telephonic communication" as "any aural transfer made *in whole or in part* through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception" (Penal Law § 250.00 [3], as added by L 1988, ch 744 [emphasis supplied]). The State statute therefore defines "telephonic communication" in such a way as to specifically encompass cordless telephone communications and, furthermore, does not incorporate the expectation of privacy requirement found in the Federal statute *(see,* Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 250.05, at 315-316).

Having concluded that the State's eavesdropping statute

applies to cordless telephone conversations, the issue remains as to whether a particular interception was an "intentional overhearing" within the meaning of Penal Law § 250.00. This issue is particularly significant with respect to cordless telephone conversations because the radio portion of the conversation is broadcast to those nearby, and it may at times be difficult to distinguish between those who inadvertently intercept a conversation and those who deliberately seek out conversations (see, Note, *Don't Touch that Dial: Radio Listening Under the Electronic Communications Privacy Act of 1986*, 63 NYU L Rev 416 [1988]). Here, the facts surrounding the interception of the conversations by the New York City police officer are not before us since the court did not hold a suppression hearing. Nevertheless, it is not necessary to remit the matter for a hearing because we find that suppression of the evidence derived from the eavesdropping warrants was properly denied on other grounds.

■ The record indicates that there was sufficient evidence derived independently of the intercepted cordless telephone conversations to establish probable cause for the issuance of the initial eavesdropping warrant. Whether eavesdropping warrants are supported by probable cause is a mixed question of law and fact (see, *People v Tambe*, 71 NY2d 492). Here, in addition to the information derived from a pen register on the defendant's telephone and from the garbage left at the curb, the Task Force was provided with information from Jill, based on her personal knowledge, concerning narcotics-related activity by the defendant at his residence.

■ As an additional ground for suppression, the defendant contends that certain tape-recorded conversations obtained pursuant to the initial eavesdropping warrant were not timely sealed as required by CPL 700.50 (2). The warrant expired at midnight on November 25, 1987, and the tapes in question were not sealed until the morning of November 27, 1987. However, the intervening day was the Thanksgiving holiday. Under the circumstances, the delay in sealing the tapes does not require suppression (see, *People v Vespucci*, 75 NY2d 434; *People v Edelstein*, 54 NY2d 306).

Rubin, Eiber and Miller, JJ., concur.

Ordered that the judgments are affirmed.