STATE OF CONNECTICUT *v.* JAMES L. MCLOUGHLIN

Superior Court Geographical Area No. 14 File No. CR1498517403
at Hartford

Memorandum filed September 4, 1998

*Michael J. Weber, Jr.*, senior assistant state's attorney, for the state.

*Flaherty, Meisler & Courtney*, for the defendant.

ROBAINA, J. This is a memorandum of decision on the defendant's motion to dismiss dated February 18, 1998. The motion is denied for the reasons set forth herein.

For purposes of this motion, the court has taken the facts as presented in the state's affidavit in support of the application for an arrest warrant. Those facts are that on January 7, 1998, the defendant, James L. McLoughlin, was observed using a digital scanner to monitor a telephone conversation. The defendant, a firefighter, was working overtime at firehouse no. 7 located on Westland and Clark Streets, in Hartford. The defendant allegedly was demonstrating to a group of firefighters how the scanner worked when he was observed by Michael Smith, an equipment maintenance mechanic for the city of Hartford fire department, monitoring a telephone conversation within the firehouse. After an investigation by the Hartford police department, it was learned that the defendant allegedly utilized a scanner to intercept a conversation without the knowledge and consent of the parties to the conversation. Subsequently, the defendant was charged in violation of General Statutes § 53a-189, eavesdropping, which is a class D felony.

On or about February 18, 1998, the defendant filed the present motion to dismiss. The defendant seeks to

dismiss the charge against him on the ground "that the interception by monitoring radio-wave transmissions of communications including telephone calls is not criminal behavior in Connecticut unless the calls are made by a cellular radio telephone as defined in Connecticut General Statutes [§] 53a-187 (a) (3)."

General Statutes § 53a-187 (a) (1) defines wiretapping as "the intentional overhearing or recording of a telephonic or telegraphic communication or a communication made by cellular radio telephone by a person other than a sender or receiver, by means of any instrument, device or equipment." General Statutes § 53a-189 provides: "(a) A person is guilty of eavesdropping when he unlawfully engages in wiretapping or mechanical overhearing of a conversation. (b) Eavesdropping is a class D felony."[1]

As noted above, the defendant moves to dismiss the present prosecution on the ground that cordless telephones are not encompassed by the Connecticut eavesdropping statute. The question of whether cordless telephones are protected by the eavesdropping statutes has not been squarely addressed by our appellate courts. But see *State* v. *McVeigh*, 224 Conn. 593, 602–603, 620 A.2d 133 (1993) (holding that cordless telephones are covered by General Statutes §§ 54-41a through 54-41t, Connecticut's wiretap statutes).

Our Supreme Court has said that when construing a criminal statute, the analysis "must begin with the proposition that penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create.

---

[1] General Statutes § 53a-187 (a) provides in relevant part: "(2) 'Mechanical overhearing of a conversation' means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment. (3) 'Unlawfully' means not specifically authorized by law. . . ."

. . . This principle of strict construction informs the general rule of statutory interpretation that in the interpretation of statutes, the intent of the legislature is to be found not in what it meant to say, but in what it did say. . . . If the words are clear and unambiguous, it is assumed that [they] express the intention of the legislature . . . and [the courts] need inquire no further." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 535, 668 A.2d 1288 (1995).

General Statutes § 53a-187 (a) provides that "cellular radio telephone" refers to "a wireless telephone authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones." The legislature, however, has not expanded this definition despite improved and more widely used "wireless" telephone technology. In 1991, the legislature rejected House Bill No. 5718. *State* v. *McVeigh*, supra, 224 Conn. 620. That bill would have amended the definition of "wiretapping" within the meaning of § 54-41a to include cordless telephones. Id.

The essence of the defendant's argument is that the rejection of House Bill No. 5718 excludes wireless telephones from the terms of § 53a-189, the eavesdropping statute. An analysis of the defendant's argument requires a review of the legislative history of both the wiretapping and eavesdropping statutes.

"In 1969, the legislature enacted as part of our Penal Code; Public Acts 1969, No. 828; the eavesdropping statutes, now codified at General Statutes §§ 53a-187 through 53a-189. . . . In 1971, the legislature, in seeking to regulate the conduct of law enforcement officials whom it specifically had exempted from the eavesdropping statutes two years earlier, enacted the wiretapping statutes." (Citation omitted.) *Washington* v. *Meachum*, 238 Conn. 692, 708, 680 A.2d 262 (1996). Despite the difference in the timing of the enactment

of the eavesdropping and wiretapping statutes, these statutes share similarities in their purposes and definitions of key terminology.

"[T]he eavesdropping statutes are intended to address *surreptitious* overhearing or recording of a telephonic or telegraphic communication and . . . their reach was intended to be limit[ed] . . . to situations in which the speakers had no reason to know that they could or might be overheard." (Emphasis in original; internal quotation marks omitted.) Id., 711. Our Supreme Court has concluded "that the eavesdropping statutes are violated only when neither party to the call knows that the call is being monitored." Id. "[T]he wiretapping statutes, like the eavesdropping statutes, were intended to apply only to *surreptitious* monitoring . . . ." (Emphasis in original.) Id., 712.

As provided by the wiretapping statutes, §§ 54-41a through 54-41t, wiretapping is the unlawful interception of any wire communication. Section 54-41a (1) defines " '[w]ire communication' " as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of telephone or telegraph between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications . . . ." " 'Intercept' " is defined as "the intentional overhearing or recording of a wire communication through the use of any electronic, mechanical or other device . . . ." General Statutes § 54-41a (2).

In comparison, under the eavesdropping statutes, " '[w]iretapping' " is defined as "the intentional overhearing or recording of a telephonic or telegraphic communication or a communication made by a cellular radio telephone by a person other than a sender or

receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment. . . ." General Statutes § 53a-187 (a) (1). An examination of the provisions of the wiretapping and eavesdropping statutes, shows that the distinction between these statutory schemes is more superficial than substantial.

Analyzing the wiretapping and eavesdropping statutes together, it is concluded that wiretapping, in a generic sense, is prohibited by both statutory schemes.[2] Both statutory schemes utilize similar language to draw out the parameters of wiretapping, and, but for small distinctions in the terminology, these statutes prohibit the same conduct.[3] The phrase "in whole or in part" contained in § 54-41a should not be viewed as a distinction that renders the wiretapping statute completely different than the eavesdropping statute. The phrase "telephonic or telegraphic communication" in the eavesdropping statute is similar in scope to "in whole or in part . . . by the aid of telephone or telegraph" in the wiretapping statute, because both phrases describe a realm or type of communication that is covered for the generic purpose of wiretapping. It is then logical that the phrase "in whole or in part" should be viewed as amplifying the meaning of "wire communication" and not wiretapping. As such, the wiretapping and eavesdropping statutes are more similar than they are different for purposes of determining the types of communication encompassed by their provisions.

[2] Wiretapping, as provided by §§ 54-41a through 54-41t, refers to the physical act of utilizing and/or installing a device to intercept wire communications. Eavesdropping, conversely, merely refers to overhearing or recording a conversation. No physical intrusion is required to commit the crime of eavesdropping. See General Statutes §§ 53a-187 through 53a-189.

[3] General Statutes § 53a-187 (b), however, specifically provides that the eavesdropping statute does not apply to "wiretapping by criminal law enforcement officials in the lawful performance of their duties . . . ."

The main distinction between the two statutory schemes is that the wiretapping statutes apply to "investigative officers" while the eavesdropping statutes apply to private individuals. Compare General Statutes §§ 54-41a through 54-41t with General Statutes §§ 53a-187 through 53a-189. This distinction, although significant, does not preclude viewing the scope of these statutes in a similar light.[4]

In 1993, when our Supreme Court decided *McVeigh*, the decision ran "counter to the numerical weight of authority in other jurisdictions where courts have interpreted either the original federal definition of 'wire communication' or similar definitions in their own states." *State* v. *McVeigh*, supra, 224 Conn. 622–23. As our court noted, however, "[o]ur wiretap act is modeled on the federal act, although in many respects it is more restrictive than the federal act." Id., 604. The court, therefore, refused to be constrained by case law from other jurisdictions applying their own statutory schemes, and enumerated four reasons for construing the wiretapping statutes to encompass cordless telephones.

First, the court reasoned that the focus of § 54-41a is to protect communication that travels "in whole or in part" over telephone lines. Id., 610. The court refused to exclude the radio wave portion of a cordless telephone call from the coverage of § 54-41a. Id. The court described the mechanics of a cordless telephone call as such: "When a telephone call is initiated from the handset of a cordless telephone, it travels from the handset to the base unit via radio waves; *from the base unit it travels through the telephone lines*." (Emphasis added.) Id., 598. Thus, the court reasoned that even though the radio waves are not explicitly protected by

---

[4] For example, General Statutes § 54-41r affords a civil remedy to any person whose wire communication is intercepted, disclosed or used in violation of the wiretapping provisions or in violation of the eavesdropping statutes.

§ 54-41a, the manner in which they travel to the receiver of the telephone call; i.e., "in whole or in part" over telephone lines, is protected. See id., 610–11.

Second, our Supreme Court reasoned that the legislative history of the wiretapping statute, and the "judicial gloss" placed upon it, "counsel strongly for an interpretation that favors protection for cordless telephone conversations." Id., 611. The court was particularly mindful of the legislature's intent that questions over the scope and meaning of the act should be answered by requiring strict adherence by law enforcement authorities to its provisions. Id., 611–12. The court also placed great emphasis on the apparent legislative intent that any invasion of privacy under the act should be carefully limited to only those intrusions for which the act necessarily provides. Id.

Third, the court reasoned that cordless telephones should be covered by the wiretapping statute so as to provide "innocent third parties" with protection from invasions of their privacy. Id., 612. The court was clearly concerned that if cordless telephones were not protected, parties "who are at the other end of the conversations . . . may have no way of knowing that, although they are speaking over traditional wired telephones, their conversations are unprotected." Id.

Finally, the court noted that the narrow definition of wiretapping suggested by the state would frustrate "the two principal concerns of the wiretap act—the necessities of law enforcement and the privacy of individuals . . . ." Id., 617. The court, implicitly drawing upon the other factors listed above, reasoned that the balance should be struck in favor of strictly interpreting the wiretapping statute to protect cordless telephone conversations. See id., 616–17. Accordingly, the court held that cordless telephone conversations come within the

meaning of "wire communication" as set forth in § 54-41a.

In 1989, the legislature amended the definition of "wiretapping" for purposes of §§ 53a-187 (a) and 53a-189 to include cellular radio telephone communication. See Public Acts 1989, No. 89-103.

In 1991, the legislature defeated House Bill No. 5718 that would have expressly provided that cordless telephone communications are protected by the wiretapping statutes. While different reasons were offered for rejecting this bill, the overriding legislative opinion appears to have been that cordless telephones should not be covered by the wiretapping statutes.

Nevertheless, in reaching its decision, the *McVeigh* court expressly refused to rely on the legislative history and failed amendment efforts regarding wiretapping as it is defined in § 54-41a. The Supreme Court found the legislative activity of 1989 and 1991 to be unpersuasive in determining the meaning of wiretapping as originally enacted. *State* v. *McVeigh*, supra, 224 Conn. 621.

When § 53-187 was amended in 1989, our legislature indicated that if there is intent to overhear or interrupt third parties' conversations without their consent, then the surreptitious listener would be guilty of eavesdropping. One legislator, drawing an analogy between the eavesdropping and wiretapping statutes, stated: "If it was [intentional] it would be just like wiretapping intent to overhear." 32 H.R. Proc., Pt. 11, 1989 Sess., p. 3615, remarks of Representative Richard D. Tulisano.

In 1994, Connecticut's interpretation of its wiretapping act was squared with the federal template; the exclusion of the radio portion of cordless telephone communications from the definitions of wire and electronic communication within title III of the Omnibus Crime Control and Safe Streets Act of 1968 was

repealed. Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414, § 202 (a), 108 Stat. 4279 (1994). The subsequent amendment to the federal wiretapping and electronic surveillance statute underscores the observation of our Supreme Court; one cannot "ignore the vital role that the cordless telephone has come to play in private communication." *State* v. *McVeigh*, supra, 224 Conn. 618.

The Connecticut Supreme Court has noted that "approximately forty-three million cordless telephones were sold between 1988 and 1991, that the industry estimated sales of nearly sixteen million units in 1992, and that it also estimates that 41 percent of the approximately ninety-five million households in the nation have cordless telephones." Id., 601–602. While sheer market volume alone should not secure protection of cordless telephone communications, the overriding factor that favors coverage, however, is that "when an individual converses over the telephone, although he certainly runs the risk that *the other* party may publicize his conversation, he ordinarily does not expect that others are also listening without the consent of either party to the conversation." (Emphasis in original.) Id., 613 n.22.

This reasoning is also supported by *People* v. *Fata*, 159 App. Div. 2d 180, 559 N.Y.S.2d 348, appeal denied, 76 N.Y.2d 985, 565 N.E.2d 523, 563 N.Y.S.2d 774 (1990). In *Fata*, the court held that the New York eavesdropping statute applies to cordless telephone conversations. Id., 185–86. New York's provisions regarding eavesdropping bear substantial similarity to § 53a-187.

Eavesdropping is defined under New York law so as to include " 'wiretapping' " and " 'mechanical overhearing of a conversation.' " Id., 184–85. Penal Law § 250.00 defines wiretapping as " 'the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof,

without the consent of either the sender or receiver, by means of any instrument, device or equipment' (Penal Law § 250.00 [1]). Mechanical overhearing of a conversation is 'the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment' (Penal Law § 250.00 [2])." *People* v. *Fata,* supra, 159 App. Div. 2d 185.

In holding that cordless telephone conversations are protected under New York law, the court reasoned that "[i]f cordless telephone conversations were to be excluded from the statutory definition of eavesdropping, law enforcement officials would be permitted to engage in pervasive monitoring of cordless telephone conversations without the judicial oversight applicable to other forms of eavesdropping." Id. Furthermore, the court noted that a recent amendment to the eavesdropping statute would alter "telephonic communication" to mean "any aural transfer made *in whole or in part* through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception . . . ." (Emphasis in original; internal quotation marks omitted.) Id.; compare General Statutes §§ 53a-187 and 54-41a; see also *State* v. *Bidinost,* 71 Ohio St. 3d 1467, 644 N.E.2d 1389 (1995) (holding Ohio wiretapping statute encompasses cordless telephones within statutory language similar to Connecticut's definition of wire communication).

The New York Penal Law detailed in *Fata* is remarkable in that it closely mirrors our own wiretapping and eavesdropping statute, and because the New York legislature has blended together provisions contained in both § 53a-187 and § 54-41a. While our legislature has not amended our wiretapping or eavesdropping statutes

to clarify any concerns over cordless telephone communications, neither has our legislature acted to amend our wiretapping statute in light of *McVeigh.* " 'The legislature is presumed to be aware of the interpretation placed upon its legislation by the courts and the effect which its own nonaction thereafter may have.' " *State* v. *Marsala,* 216 Conn. 150, 158, 579 A.2d 58 (1990), quoting *Buxton* v. *Ullman,* 147 Conn. 48, 56, 156 A.2d 508 (1959), appeal dismissed, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961). As such, it may be inferred that our legislature does not disapprove of the protection afforded to cordless telephone communications. Accordingly, this court holds, based upon the reasoning of *McVeigh,* that cordless telephone conversations are "telephonic" communications protected under §§ 53a-187 and 53a-189. Accordingly, the defendant's motion to dismiss is denied.