Memorandum of Decision
This is an action for the termination of parental rights of Erika T., the female biological parent of the minor children, Sheneal, born July 4, 1995, and Queshon M., born February 5, 1998. The petition also seeks to terminate the parental rights of Ramiek H., the putative male biological parent of Sheneal W. Jr.[2], and the parental rights of Allandus M., the putative male biological parent of Queshon. The petition to terminate the parental rights was filed by the Commissioner of the Department of Children and Families ("DCF") on September 18, 1998.
The petition is based upon a new ground for termination as set forth in P.A. 98-241, which, in part, adds a new subsection, General Statutes § 17a-112(c)(3)(F), to allow the Superior Court to terminate a parent's rights if the parent has killed, through deliberate, nonaccidental act, another child of the parent or has requested, commanded, importuned, attempted, conspired or solicited such killing or has committed an assaultthrough deliberate, nonaccidental act, and such assault resultedin serious bodily injury of another child of the parent.
(Emphasis added to applicable language.) Section 18 of the Public Act provides that this portion of the act shall take effect on July 1, 1998.
As will be hereafter described, the petitioner maintains that an act of assault causing serious bodily harm to another child of the parent occurred on or about September 26, 1997. The ground became effective July 1, 1998 and the petition to terminate the parental rights was filed on September 18, 1998. The CT Page 191 respondents[3] have filed a motion to strike the petition on the grounds that the petitioner cannot retrospectively apply this legislation to facts and circumstances which occurred before the statute's effective date. Counsel have each filed memoranda in accordance with Practice Book § 10-39. After consideration of the facts and the law the motion to strike is denied.
A. FACTS:
DCF became involved in this case in June, 1997, upon the complaint of a neighbor who maintained that the children's mother, Erika, had been observed striking another child of the mother, Akire M., born March 5, 1997. The neighbor said that Erika yanked the child forcefully by the arm, threw the child "at least a yard," called the baby degrading names, stated she wished she never had the baby, left the child unattended and allowed the child's older sibling to hit and pinch the child. The report noted that the child's father was incarcerated.
On September 26, 1997, the child was brought to the local health center where the child, on exam appeared to be blind and deaf. The child had been previously examined on ten days earlier, and was neither blind nor deaf at that time. A thorough medical examination of the child revealed cataracts of the eyes and tears of the retina that appeared to have been caused by abusive trauma, fractures to the right ulna and both clavicles, which were at least a month old, rib fractures and recent femur fractures which were most diagnostic of child abuse. The medical director of the child abuse assessment team concluded that these were serious injuries and that the child would risk further child abuse or death of the child if returned to the mother's care.
Akire's father was interviewed at the prison where he is now incarcerated. He indicated that the mother had recently brought the child to the prison to visit him. The child had sores on his legs. Erika, the mother, told the father that she has beaten the child with her keys; that she cannot deal with Akire's crying; that she wished she never had him, she wanted a girl; she thought the child was ugly and wished him to be dead. The father said that he had seen the mother throw the child and be verbally abusive to the child in his presence. The father did not report the mistreatment to any authorities or attempt to take any protective action to safeguard the child.
As a result of Akire's serious, life-threatening injuries, CT Page 192 DCF sought and obtained orders of temporary custody. The three children, Akire, Sheneal and Queshon have been in foster care since September 27, 1997.
B. Motion to Strike:
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted . . . [The court] must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
C. Analysis of Connecticut law:
The respondent argues that the petition for termination of her parental rights should be struck because the facts alleged in the petition occurred prior to the effective date of P.A. 98-241
§ 8, and thus that act cannot, as a matter of law, be retrospectively applied in order to effectuate the termination of her parental rights. In response, the petitioner argues that the legislature intended to apply the new ground to the present case.
The case law of our state with respect to statutory construction has been well defined. This court is guided by the following principles.
1. Substantive legal rights are presumed to be appliedprospectively.
"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilizewell established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The `obligations' referred to in the statute are those of substantive law . . . Thus, we have uniformly interpreted §55-3 as a rule of presumed legislative intent that statutes CT Page 193 affecting substantive rights shall apply prospectively only . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively . . . Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect . . . We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect." (Citations omitted; internal quotation marks omitted.) Colonial Penn Ins. Co. v. Bryant,245 Conn. 710, 718-19, 714 A.2d 1209 (1998).
 2. The rule of prospective application of new statutes is a presumption not a rule of law.
"It is important to note at the outset that the mere fact that a statute is retrospective does not itself render it invalid . . . Thus, General Statutes § 55-3 . . . establishes a rule of presumed legislative intent . . . rather than a rule of law." (Citation omitted.) Schieffelin Co. v.Department of Liquor Control, 194 Conn. 165, 174, 479 A.2d 1191
(1984).
 3. It is necessary to understand the legislative intent and the policy sought to be implemented.
"Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislative and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Sears, Roebuck Co.v. Board of Tax Review, 241 Conn. 749, 758-59, 699 A.2d 81
(1997).
The legislative history and the circumstances surrounding the enactment of the this new ground for termination of parental rights are very clear for two reasons, first, Senator Donald E. Williams, Jr., co-chair of the judiciary committee, announced the legislative policy that this bill was designed to implement. On May 5, 1998, after moving the adoption of this bill Senator Williams stated "[T]his bill addresses the requirements of the CT Page 194 Federal Adoption and Safe Families Act . . . That act requires the state to develop and expedite the permanent placement of children and to insure the safety of children. This bill will expedite court review of child abuse cases and encourage permanent placement of children at the earliest possible date." 41 S. Proc., Pt. 9, 1998 Sess., pp. 2664-2668.
The second reason that makes the meaning and intent of the new ground very clear is that, the language tracks, in nearly identical language, the federal law. Public Law 105-89, the Adoption and Safe Families Act of 1997, 111 Stat. 2115, codified in 42 U.S. Code, states this similar language in at least two provisions. The Social Security Act, which is the operative federal document relating to foster care and child protection was amended by the Adoption and Safe Families Act (42 U.S.C. § 671(a)(15)) to eliminate the need for child protection agencies to make reasonable efforts to reunify parents with children under circumstances where ". . . (I) the parent has subjected the child to aggravating circumstances (as defined by State law, . . .) (ii) the parent has . . . (IV) committed a felony assault that results in serious bodily injury to the child or another child of the parent.
The second provision, Sec. 103 of the Adoption and Safe Families Act, requires the States to initiate or join proceedings to terminate parental rights for certain children in foster care. The federal law requires State action where the parent has ". . . committed a felony assault that has resulted in serious bodily injury to the child or to another child of the parent, the State shall file a petition to terminate the parental rights of the child's parents . . . and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption . . ." 42 U.S.C. § 675(5)(E).
With this understanding of the legislative intent as expressed by Senator Williams and the nearly identical and mandatory language of the federal law, the court is clearly able to ascertain and give effect to the apparent intent of the legislature.
 4. Language of a statute is to be given its plain and unambiguous meaning.
"In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and CT Page 195 usual sense unless the context indicates that a different meaning was intended . . . When the language is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent . . . Indeed, [a] basic tenet of statutory construction is that when a statute . . . is clear and unambiguous, there is no room for construction . . ." (Internal quotation marks omitted.) Gural v. Iazzino, 45 Conn. App. 586, 588, 696 A.2d 1307
(1997). "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions . . . It is a basic tenet of statutory construction that the legislature did not enact meaningless provisions . . . Accordingly, care must be taken to effectuate all provisions of a statute . . . Statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . ." (Citation omitted; internal quotation marks omitted.) Ferrigno v.Cromwell Development Associates, 244 Conn. 189, 196,708 A.2d 1371 (1998).
The court finds that the plain language of P.A. 98-241 § 8(c)(3)(F) unambiguously indicates that the legislature intended that provision to be applied retroactively to facts which took place prior to its enactment. Indeed, the statute provides: "[The parent] has committed an assault, through deliberate, nonaccidental act that resulted in serious bodily injury of another child of the parent." (Emphasis added.) General Statutes § 17a-112, as amended by P.A. 98-241 § 8(c)(3)(F). The fact that the legislature chose to use the present perfect tense unambiguously indicates that the legislature intended to apply this provision to a parent who has acted in the manner specified by the statute. The legislature's use of the present perfect tense unambiguously indicates its intent to consider both past and present assaultive behavior on the part of a parent. A contrary intent could be established, for example, if the legislature drafted the statute in the present tense by stating "the parent commits an assault." A comparison can be made to Connecticut's assault statute, which is drafted in the present tense. See General Statutes § 53a-59.[4]
"Words and phrases are to be construed according to the commonly approved usage of the language. General Statutes §1-1(a); Caldor, Inc. v. Heffernan, 183 Conn. 566, 570,440 A.2d 767 (1981). The use of the present perfect tense of a verb indicates an action or condition that was begun in the past and CT Page 196 is still going on or was just completed in the present."Schieffelin Co. v. Department of Liquor Control, supra,194 Conn. 174-75. In the present case the legislature's use of the present perfect tense, i.e., "has committed" unambiguously indicates that the legislature intended for the court to consider conduct that occurred in the past up to and including the present.
Similarly, the federal language speaks of conduct that "has resulted in serious bodily injury." Because the legislature indicated that it intended for the court to consider the conduct of a parent in the past, the court concludes that P.A. 98-241
§ 8(c)(3)(F) applies retrospectively to the respondent's conduct.
 D. Alternative analysis of Connecticut law:
Even if the court were to construe this provision of the act only prospectively, the petitioner still could rely on prior factual occurrences. Under this analysis, the statute would be prospectively applied to every termination petition which is brought after the act's effective date. It is not invalid to rely on events which occurred prior to the law's enactment. "[A] statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date." 2 J. Sutherland, Statutory Construction (5th Ed. Singer 1993) § 41.01, p. 338. By contrast, the act could not be applied retrospectively to termination petitions which were filed prior to the act's effective date. Here, the petition was filed on September 18, 1998, subsequent to the act's effective date of July 1, 1998.
Consistent with this analysis is In re Migdalia M.,6 Conn. App. 194, 200, 504 A.2d 533, cert. denied, 199 Conn. 809 (1986).
In that case the Appellate Court stated that "there is no legislative or decisional mandate allowing a trial court to decide . . . [the issue of termination of parental rights] on the basis of statutes existing at the time of trial, but not in effect when the termination petition was filed. The mandates are to the contrary. Parents have a constitutionally protected right to raise and care for their children and that protection cannot be diluted by the use of statutory standards enacted subsequentto a petition to terminate that right, absent a counter
CT Page 197legislative directive." (Emphasis added.) Id. Accordingly, the law to be applied in a termination proceeding is the law that exists at the time the termination proceeding is brought. The grounds in the present case were enacted prior to the filing of the termination petition, the court concludes that, following an analysis of state law, P.A. 98-241 § 8(c)(3)(F) is applicable to the present termination proceeding.
 E. Constitutional Issues:
Because the present case involves facts which occurred prior to the enactment of the statute, and because, as will be explained, fundamental rights are affected, the court concludes that a constitutional analysis of the statute as applied to the respondent is necessary. "The validity of legislation which has retroactive effect is often challenged on constitutional grounds. Mere retroactivity is not alone sufficient, however, to make a statute invalid. The police power is capable of dealing with conditions which come into being prior to the enactment of legislative measures pertaining to them. New grounds for divorce, for example, have been held applicable to permit a divorce after they were enacted based on facts which occurred prior thereto.[5]
Because they affect conditions on transactions prior to their enactment, retroactive statutes are more likely to be repugnant to constitutional protection of prior rights." Id., § 41.03, p. 344.
The respondent argues that retroactive application of this statute affects fundamental rights protected by the state and federal constitutions. "At issue in this case is the right to family integrity, a right that this court has recognized to be of constitutional significance; McGaffin v. Roberts, 193 Conn. 393,400, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050,105 S.Ct. 1747, 84 L.Ed.2d 813 (1985); and has elevated to its proper status. In re Juvenile Appeal (83-CD), 189 Conn. 276, 284,455 A.2d 1313 (1983). The United States Supreme Court has also consistently emphasized the constitutional importance of family integrity. "The rights to conceive and to raise one's children have been deemed essential . . . basic civil rights of man . . . and [r]ights far more precious . . . than property rights . . . It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder . . . The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth CT Page 198 Amendment . . . the Equal Protection Clause of the Fourteenth Amendment . . . and the Ninth Amendment . . ." (Citations omitted; internal quotation marks omitted.) Stanley v. Illinois,405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This right to family integrity does not, however, belong only to the parents. Rather, it "encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the companionship, care, custody and management of his or her children, [id.], and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association, with the parent, [Smith v. Organization of FosterFamilies for Equality Reform, 431 U.S. 816, 844, 97 S.Ct. 2094,53 L.Ed.2d 14 (1977)]." (Internal quotation marks omitted.)Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977). "[T]he most essential and basic aspect of familial privacy [is] the right of the family to remain together without the coercive interference of the awesome power of the state." (Internal quotation marks omitted.) In re Alexander V., 223 Conn. 557,561, 613 A.2d 780 (1992). There is little doubt that breaches in the familial bond will be detrimental to a child's well-being. Inre Juvenile Appeal (83-CD), supra, 286 and n. 11. Although the state has a substantial interest in protecting minor children;Stanley v. Illinois, supra, 405 U.S. 649; we have long recognized that intervention in family matters by the state is justified only when such intervention is actually "in the best interest of the child." See General Statutes §§ 17a-112 and 46b-129(e);State v. Anonymous, 179 Conn. 155, 165, 425 A.2d 939 (1979). Courts and state agencies, therefore, must keep in mind the constitutional limitations imposed on a state that undertakes any form of coercive intervention in family affairs. Some of the same constraints have been imposed upon the state by the legislature, recognizing the importance of the prompt adjudication of cases in which the state has interfered with the family unit. See General Statutes § 46b-129(b). The defendants' challenge to the plaintiff's complaint must be addressed in light of these considerations." Pamela B. v. Ment, 244 Conn. 296, 309-310
(1998).
"The due process clause of . . . [the Connecticut Constitution], like the similar provision in the federal fourteenth amendment, provides for varying levels of judicial review to determine whether a state statute or regulation passes constitutional muster in terms of substantive due process . . . If, however, state action invidiously discriminates against a suspect class or affects a fundamental right, the action passes CT Page 199 constitutional muster under the state constitution only if it survives strict scrutiny." Fair Cadillac-Oldsmobile IsuzuPartnership v. Bailey, 229 Conn. 312, 317-18, 640 A.2d 101
(1994).
This court concludes therefore that since the retroactive nature of P.A. 98-241 § 8(c)(3)(F) affects the respondent's fundamental right to family integrity, the court will strictly scrutinize the statute as applied to the respondent. "Where fundamental rights are concerned we have a two-part test: [1] regulations limiting these rights may be justified only by a compelling state interest, and . . . [2] legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." (Internal quotation marks omitted.) In re Juvenile Appeal (83-CD), 189 Conn. 276, 285,455 A.2d 1313 (1983). "Parents have a constitutionally protected right to raise and care for their own children . . . This right is not free from intervention by the state, however, when the continuing parens patriae interest of the state in the well being of children is deemed by law to supersede parental interests." Inre Juvenile Appeal (83-DE), 190 Conn. 310, 318-19, 460 A.2d 1277
(1983). "The state has a substantial interest in protecting minor children . . ." (Citations omitted.) In re Juvenile Appeal(83-CD), supra, 189 Conn. 285.
The often stated mantra of the Adoption and Safe Families Act is that "the health and safety of children shall be the paramount concern." This is a federal mandate that has been recognized and adopted by our Connecticut legislature. Representative Joan V. Hartley stated that the act "balance[s] appropriately the need to protect children from abuse and neglect . . ." 41 H.R. Proc., Pt. 12, 1998 Sess., p. 4164. Representative Konstantinos Diamantis, supporting the bill, stated: "One of the other issues that is of paramount concern to the bill and to both the state and federal government is initiating the child's health and safety being paramount in determining reasonable efforts to reunify or, in fact, terminate." 41 H.R. Proc., Pt. 12, 1998 Sess., p. 4148. And Representative Christel H. Truglia, summarizing the act stated,P.A. 98-241 "requires DCF to file a petition to terminate parental rights in certain serious cases. It specifies that DCF does not have to make reasonable effort to reunify the parents with a child in egregious cases. It clarifies existing grounds for termination and creates new grounds to cover certain criminal acts." 41 H.R. Proc., Pt. 12, 1998 Sess., p. 4165. The foregoing CT Page 200 statements unambiguously indicate the legislature's intent that the provisions of P.A. 98-241 were enacted to protect children. As earlier stated, it is beyond debate that the state has a compelling interest in protecting children. See also In reJuvenile Appeal (83-DE), supra, 190 Conn. 310. The court finds that P.A. 98-241 § (8)(c)(3)(F) directly furthers this goal by removing children from the serious dangers presented by being raised by an abusive parent.
Furthermore, P.A. 98-241 § 8(c)(3)(F) is narrowly tailored to achieve this end. In the present case, the ground used in the petition applies only to a parent who has committed an intentional assault that results in the serious injury to a child of the parent. The court finds that the act properly balances a parent's constitutionally protected interest in maintaining the integrity of the family and the state's clearly expressed interest in protecting children.
Thus, the court finds that P.A. 98-241 § 8(c)(3)(F), as applied to the respondent, does not violate her right to due process of law under the state or federal constitutions. The state has a compelling interest in protecting its children, and the legislative enactment is narrowly drawn to express only the legitimate state interests at stake. This conclusion is consistent with the law of other states which have examined the issue. See, for example In the Interest of Amanda A.,534 N.W.2d 907 (Wis.App. 1995) holding that a new provision of the state's termination of parental rights statute, which retrospectively applied to the facts giving rise to the termination petition, met the burden of strict scrutiny and did not violate the respondent's constitutional rights. See also In re Joshua M.,78 Cal.Rptr.2d 110, 116-18 (Cal.App. 4 Dist. 1998) holding that conduct which occurred prior to the effective date of law which cut off respondent's reunification services was not impermissibly retroactive.
 F. Conclusion:
Accordingly, the court concludes that the termination of parental rights petition brought against the respondent underP.A. 98-241 § 8(c)(3)(F) does not violate Connecticut law nor does it violate her state or federal constitutional rights.
For the foregoing reasons, the motion to strike the petition is denied. CT Page 201
Foley, J.