[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Thomas O'Neil, moves for summary judgment. This suit was commenced by service of process upon O'Neil on November 24, 1998. The twenty-eight paragraph complaint alleges one count of tortious interference with a contract of employment. On January 5, 2000, O'Neil filed this motion for summary judgment, which was heard at short calendar on April 3, 2000.
Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A material fact is a fact that will make a difference in the result of the case." Lunn v. Cummings Lockwood, 56 Conn. App. 363,370 (2000), citing Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578 (1990). "The facts at issue are those alleged in the pleadings." Id., citing Plouffe v. New York, New Haven HartfordR. Co., 160 Conn. 482, 489 (1971).
"In deciding a motion of summary judgment, the trial court must CT Page 4918 view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issues [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Brackets in original; citations omitted.) Witt v. St. Vincent's Medical Center, 252 Conn. 363, 368
(2000). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented. . . ." Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554 (1998).
"A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book § 17-45. Although "[a] response to a question propounded in a deposition is not a judicial admission;" Esposito v. Wethered, 4 Conn. App. 641, 645 (1985); deposition testimony, while not conclusive, "is sufficient to support an entry of summary judgment in the absence of contradictory competent affidavits that establish a genuine issue as. to a material fact." Collum v. Chapin, 40 Conn. App. 449, 450 n. 2, (1996); seeSchratwieser v. Hartford Casualty Ins. Co., 44 Conn. App. 754, 756 n. 1 cert. denied, 241 Conn. 915 (1997).
O'Neil moves for summary judgment on the ground that, based upon the evidence submitted, there is no genuine issue of material fact, and he is entitled to judgment as a matter of law. In support of his motion, O'Neil has submitted and attached Richards' deposition, as well as his own. (See Defendant's Exhibits A and B.) Specifically, O'Neil argues that one cannot tortiously interfere with an at-will employment relationship, and, even assuming such a claim could be maintained, Richards has failed to allege any facts to demonstrate that O'Neil engaged in tortious conduct aimed at forcing her resignation. O'Neil also argues that any information obtained by Richards while listening to the private telephone conversations of O'Neil is inadmissible, as well as illegal. As such, O'Neil argues, Richards has failed to allege and submit evidence sufficient to establish the elements of a prima facie case for tortious interference.
The plaintiff counters that "there are substantial questions of fact with respect to the tortious conduct of [O'Neil]. . . ." Specifically, she argues that O'Neil's credibility is "one of the CT Page 4919 major factual issues" within this case. In addition, at oral argument, the plaintiff argued that the question of whether she had a contract of employment with Burns is a question of fact, inappropriate for summary judgment.
The following facts appear undisputed.
On or about June 26, 1997, the plaintiff, Marilyn A. Richards, was hired as a first shift security guard by Burns International Security Services (Burns). (Complaint, ¶ 1; Answer, ¶ 1.) Richards was assigned to guard the Anchor Glass facility in Dayville, Connecticut (Anchor Glass). (Complaint, ¶ 2; Answer, ¶ 2.) The defendant, Thomas O'Neil, a captain for Burns, was Richards' supervisor at Anchor Glass as well as a neighbor of Richards and her then boyfriend, Kenneth Pickles. (Complaint, ¶¶ 3 17; Answer, ¶¶ 3 17.) O'Neil was also instrumental in getting Richards the position with Burns. (Richards' Deposition, pp. 45-49; O'Neil Deposition, pp. 29-30.)
In the fall of 1997, Richards became friendly with a male Anchor Glass employee by the name of Del Martell. (Complaint, ¶ 9; Answer, ¶ 9; Richards' Deposition, p. 76.) Martell frequently visited Richards while she was working in the guard shack. (O'Neil Deposition, pp. 59-60; Richards' Deposition, pp. 163-65.) Martell and Richards expressed their amorous feelings for each other during working hours by hugging, kissing, et cetera. (Richards' Deposition, pp. 152-54, 161.)
On or about December 11, 1997, Martell gave Richards a "love letter." (Richards Deposition, pp. 199-200.) Later that afternoon, while engaging in a friendly snowball fight with Martell in one of the warehouses at Anchor Glass, Richards lost the "love letter." (Richards' Deposition, pp. 150-51, 199-200.) Another guard, Chet Cote, apparently found the letter and gave it to O'Neil. (Complaint, ¶ 12, O'Neil Deposition, p. 47.) Later, O'Neil returned the letter to Martell. (Complaint, ¶ 13; O'Neil Deposition, p. 48.) Richards subsequently spoke with O'Neil, and he told her not to worry about the letter, characterizing the incident as "a dead issue." (Richards' Deposition, pp. 140, 203.) Between the time that she lost the letter and the time O'Neil returned it to Martell, however, someone made photocopies of it and put them up around Anchor Glass. (O'Neil Deposition, p. 49.) In addition, someone placed a copy of the letter in the basket of her bicycle. (Richards' Deposition, p. 140.)
On December 17, 1997, Pickles, Richards' roommate, received a copy of this "love letter" in the mail, and on December 23, someone fitting the description of Chet Cote, drove to the couple's home and CT Page 4920 left a copy of the letter on the windshield of Pickles' vehicle. (Richards' Deposition, pp. 101-02, 180-81.) Shortly thereafter, Pickles received a telephone call informing him that Richards was having an affair. (Richards' Deposition, pp. 103-04.)
Beginning sometime before December 18, 1997, Richards and Pickles began listening to O'Neil's telephone conversations with the aid of a scanner that Pickles had modified. (Richards' Deposition, pp. 174-75.) Richards overheard several telephone calls between O'Neil and Cote in which she was the topic of conversation. (Richards' Deposition, pp. 174-75, 178-80, 218-25.)
On or about January 2, 1998, O'Neil informed Richards that he was changing her hours, effective immediately, in order to put a stop to the situation between her and Martell. (Richards' Deposition, pp. 280-81.) Because of the change in hours, Richards tendered her resignation by telephoning Gerry Hopkins in the Burns Hartford office on approximately January 5, 1998. (Richards' Dep., pp. 235, 278, 279.)
Assuming arguendo that Richards did have a contract of employment with Burns susceptible to tortious interference, the court concludes that there exists insufficient factual support for such a claim. Accordingly, O'Neil's motion for summary judgment is granted.
Our Supreme Court "has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . [It has held, however, that] not every act that disturbs a contract or business expectancy is actionable." (Citation omitted.) Daley v. Aetna Life Casualty Co., 249 Conn. 766, 805, (1999). In order for a plaintiff to establish a prima facie case of tortious interference, he or she must allege and prove the necessary elements. "`The elements of tortious interference are [1] the existence of a contractual. or beneficial relationship, [2] the defendants' knowledge of that relationship, [3] the intent to interfere with it, and [4] the consequent actual loss suffered by the plaintiff.'" Emerick v. Kuhn, 52 Conn. App. 724, 752 cert. denied,249 Conn. 929 (1999), quoting Hart, Nininger Campbell Associates,Inc. v. Rogers, 16 Conn. App. 619, 629 (1988).
As to the third element of a tortious interference claim, the plaintiff "must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [A]n action for intentional interference with business relations requires the CT Page 4921 plaintiff to plead and prove at least some improper motive or improper means . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification. . . . In other words, the employee bears the burden of alleging and proving lack of justification on the part of the actor." (Citations omitted; internal quotation marks omitted.) Daley v. AetnaLife Casualty Co., supra, 249 Conn. 805-06.
In addition, when the tortious interference claim is against an agent of the employer, "`[t]he general rule is that the agent may not be charged with having interfered with a contract of the agent's principal.'" Appleton v. Board of Education, 53 Conn. App. 252, 267,730 A.2d 88, cert. granted, 249 Conn. 927 (1999), quoting Selby v.Pelletier, 1 Conn. App. 320, 328 n. 4 (1984). However, the agent "could be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain." (Internal quotation marks omitted.) Appleton v. Board of Education, supra, 53 Conn. App. 267.
In the present case, Richards alleges that, by listening in on the private telephone conversations of O'Neil, she overheard O'Neil and Cote collaborating against her. Richards alleges that she and Pickles listened to O'Neil's private telephone conversations with the aid of a scanner modified by Pickles to receive these conversations. Any evidence obtained from listening to those private telephone conversations is inadmissible and cannot be considered by the court,Rivera v. Rivera, 15 Conn. App. 529 (1988).
General Statutes § 53a-187 (a)(1) defines wiretapping as "the intentional overhearing or recording of a telephonic . . . communication or a communication made by cellular radio telephone by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment." General Statutes 53a-189 provides that: "(a) A person is guilty of eavesdropping when he unlawfully engages in wiretapping or mechanical overhearing of a conversation. (b) Eavesdropping is a class D felony." General Statutes § 52-184a provides that "[n]o evidence obtained illegally by the use of any electronic device is admissible in any court of this state." See also Rivera v. Rivera,
supra, 15 Conn. App. 530 (tapes made when husband placed recording device on family telephone to intercept calls between his wife and third parties were clearly illegal and expressly barred from evidence); State v. McLoughlin 45 Conn. Sup. 497, 723 A.2d 827 (1998) (eavesdropping on cordless telephone conversations also prohibited by CT Page 4922 §§ 53a-187 and 53a-189); Finerty v. Finerty, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 294678 (November 24, 1992, Bassick, J.) (evidence derived from eavesdropping not admissible). The plaintiff intercepted these telephone communications between O'Neil and Cote without their consent. Accordingly, any evidence derived from the overhearing of O'Neil's private telephone conversations, via the use of the scanner modified for that purpose, is inadmissible and may not be considered by the court, McColl v.Pataky, 160 Conn. 457, 460 (1971). The absence of that evidence is fatal to the plaintiff's claims.
In her complaint, the plaintiff alleges that her "love letter" was either found by O'Neil or found by Cote and given to O'Neil, and that O'Neil subsequently gave it back to Martell. She further alleges in her complaint that O'Neil made several copies of this letter before returning it to Martell and that he place one of those copies in the basket of Richards' bicycle. O'Neil, however, denies this allegation, and the plaintiff acknowledges in her deposition that she has no personal knowledge or information that it was O'Neil who made copies of the letter. (Richards' Deposition, p. 241.) In her complaint, the plaintiff also alleges that O'Neil sent a copy of this letter to Pickles. However, O'Neil also denies this allegation, and the plaintiff acknowledges in her deposition that she doesn't know who, in fact, sent the letter. (Richards' Deposition, pp. 233-34.) The complaint contains further allegations against Cote. Finally, Richards' claim is found in paragraph 25 of her complaint, which states that "[b]ecause of the actions of the defendant, Thomas O'Neil, in tortiously interfering with the contract of employment, the Plaintiff was forced to resign and seek medical attention." Richards also alleges that O'Neil subsequently gave Cote a promotion, to which she may have been entitled, upon her resignation. However, she admits that she never voiced an interest in any promotion nor ever applied for one. (Richards' Deposition, pp. 242-43.) The complaint contains no additional allegations against O'Neil in support of the plaintiff's tortious interference claim.
The plaintiff makes no specific allegation that she even had a contract of employment with Burns. Assuming arguendo, however, that such a question should be left for the jury, there is no allegation and no admissible evidence that O'Neil intended to interfere with her relationship with Burns. Evidence may be in issue as to whether O'Neil interfered with the plaintiff's relationship with Pickles or Martell, but not with her employer.
However, even if the plaintiff could prove each allegation of her CT Page 4923 complaint as it relates to O'Neil, a claim for tortious interference in her employment with Burns would not lie. "[A]n action for intentional interference . . . requires the plaintiff to plead . . . at least some improper motive or improper means." Daley v. Aetna Life Casualty Co., supra, 249 Conn. 806. "In other words, the employee bears the burden of alleging . . . lack of justification on the part of the actor." Id.
Additionally, the plaintiff acknowledges in her deposition that O'Neil, as her supervisor, could have fired her for her behavior with Martell, but did not do so. (Richards Deposition, p. 161.) She acknowledges that her conduct was "probably" inappropriate. (Richards' Deposition, p. 161.) She further admits destroying property in the guard shack by jamming a lock "so good that [Cote] couldn't get the key in . . . [and] had to saw it off. (Richards' Deposition, pp. 168-69.) Finally, she states that the reason she quit her job at Burns was not because of the alleged "harassing" behavior of O'Neil. but because O'Neil switched her shift in order to keep her away from Martell during working hours at Anchor Glass. (Richards' Deposition, pp. 278, 279-81.)
The plaintiff's claim fails for another reason. Richards makes no allegation that she was "forced to resign" by O'Neil in order that he might personally profit from her resignation. O'Neil, as an agent of Burns, was within his authority to change her hours in order to break up the inappropriate situation that had developed between Richards and Martell. Richards acknowledges as much in her deposition. (Richards' Deposition, pp. 161, 279-81.) An agent may not be charged with tortiously interfering with a contract of his principal unless "he did not act legitimately within his scope of duty [and] used the corporate power improperly for personal gain." Appleton v. Board ofEducation, supra, 53 Conn. App. 267. Clearly, O'Neil's action in changing the plaintiff's work hours were within his supervisory capacity as an agent of Burns.
Accordingly, O'Neil's motion for summary judgement is granted.
SFERRAZZA, JUDGE. CT Page 4924