******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., dissenting. I respectfully disagree with the majority's conclusion that the decision of the defendant, the Commissioner of Housing,[1] to terminate rental assistance provided under a statutory rental assistance program to the plaintiff, Francis Shannon, on the basis of § 17b-812-13 (9) of the Regulations of Connecticut State Agencies was an impermissible retroactive application of the regulation as applied to the plaintiff. The majority reasons that under General Statutes § 55-3, which codifies a presumption against the retroactivity of enacted statutes unless explicitly stated otherwise, the termination of rental assistance to the plaintiff constitutes "a new obligation" on the plaintiff's status as a registered sex offender. I do not agree that the defendant's decision involved retroactive application of § 17b-812-13 (9) of the regulations to the plaintiff. Instead, I conclude that the defendant properly terminated rental assistance to the plaintiff upon learning that the plaintiff is subject to lifetime sex offender registration. The plain language of § 17b-812-13 of the regulations provides the defendant with the discretion to prospectively terminate rental assistance to program participants. Because the majority concludes that the termination of rental assistance to the plaintiff was a retroactive application of the regulation and that the defendant was without authority to terminate that assistance, I respectfully dissent.

In its opinion, the majority adopts the plaintiff's contention that the trial court improperly dismissed his administrative appeal on the ground that the defendant did not apply § 17b-812-13 (9) of the regulations retroactively in terminating his rental assistance. In contrast, the defendant argues—in my view, correctly—that the termination of the plaintiff's rental assistance was purely prospective and that the plain language of § 17b-812-13 clearly provides the defendant with the discretion to terminate rental assistance to a present participant under the program. Accordingly, I would conclude that the trial court properly determined that application of § 17b-812-13 (9) to the plaintiff was not impermissively retroactive and that the defendant did not exceed her authority in doing so.

I begin with the text of § 17b-812-13 of the regulations. This court recognizes that "[a]dministrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction, namely, under the well established principles of General Statutes § 1-2z." (Internal quotation marks omitted.) *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 603, 89 A.3d 841 (2014); *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 578, 22 A.3d 518 (2011). "Only if we determine that the [regulation] is not plain

and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the [regulatory] history and circumstances surrounding its [promulgation] . . . . The test to determine ambiguity is whether the [regulation], when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Sarrazin* v. *Coastal, Inc.*, supra, 603–604; *Tine* v. *Zoning Board of Appeals*, 308 Conn. 300, 305–306, 63 A.3d 910 (2013).

Under the rental program's enabling act, "[t]he Commissioner of Housing shall implement and administer a program of rental assistance for low-income families living in privately-owned rental housing. . . ." General Statutes (Supp. 2016) § 8-345 (a). Under the mandate of that legislative directive, in December, 2012, the defendant amended § 17b-812-13 of the regulations, which provides nine enumerated bases upon which the defendant may deny or terminate rental assistance. The regulation clearly states that "[t]he department or its agent *may* deny program assistance to an applicant or *terminate assistance to a participant* for any of the following reasons . . . ." (Emphasis added.) Regs., Conn. State Agencies § 17b-812-13. One of the reasons that may be cited for the denial or termination of benefits is: "[A] household family member *is subject to* a registration requirement under a state or federal sex offender registration program." (Emphasis added.) Id., § 17b-812-13 (9). As the defendant notes in her brief, the present tense phrasing of the regulation clearly demonstrates that the defendant has the authority to terminate rental assistance to a program participant, such as the plaintiff, who is presently subject to a sex offender registration requirement. Furthermore, the regulation provides that the defendant "may" terminate benefits for one of the enumerated reasons. Id., § 17b-812-13. This court has " 'consistently held that "may" is directory rather than mandatory.' " *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 122, 742 A.2d 1257 (2000); see *Seals* v. *Hickey*, 186 Conn. 337, 345, 441 A.2d 604 (1982). We therefore recognize that "the word generally imports permissive conduct and the conferral of discretion." (Internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, supra, 122; see *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996); see also *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 286, 968 A.2d 345 (2009) (recognizing that agencies have broad discretion in carrying out administrative duties).

Accordingly, the plain language of § 17b-812-13 of the regulations unambiguously provides the defendant with the discretion to terminate rental assistance to a program participant if the participant falls within one of the nine reasons listed in the regulation. In the present

case, the plaintiff is required to register as a sex offender due to his 1997 conviction in New Jersey. I also note that in oral argument before the trial court, counsel for the defendant represented that the defendant's decision to terminate the plaintiff's benefits under § 17b-812-13 (9) was motivated, at least in part, by the defendant's discovery that the plaintiff had misrepresented his status as a sex offender on a 2010 form filed with the defendant as part of the annual recertification process for the plaintiff's continued eligibility to receive rental assistance. Apparently, the defendant was unaware of the plaintiff's sex offender status at the time he was initially admitted to the program. Because the plaintiff's conviction was in New Jersey, the defendant's initial Connecticut background check did not reveal that conviction, and the defendant remained unaware of the plaintiff's status until a national sex offender registry was available online in 2010. The defendant had no knowledge of the plaintiff's status at the time of his admission to the rental program in 2009.

The defendant, therefore, had the authority to terminate the plaintiff's continued rental assistance under the program. The termination of rental assistance to the plaintiff is no different than if the defendant had terminated a program participant's continued rental assistance for one of the other reasons provided in § 17b-812-13 of the regulations, such as when a participant currently owes rent or other moneys in connection with a rental subsidy program, has engaged in violent or abusive behavior toward the defendant's personnel or when a participant fails to report an increase in personal income. See Regs., Conn. State Agencies § 17b-812-13 (6) through (8). I also observe that the majority appears to suggest that once an applicant has been admitted into the rental assistance program and begins receiving rental assistance, the only circumstance that would warrant the termination of rental assistance to a participant is the participant's failure to comply with the obligations outlined in § 17b-812-12 of the Regulations of Connecticut State Agencies. Although § 17b-812-12 establishes a number of acts that participants must perform and lists acts that a participant may not undertake while participating in the rental assistance program, that regulation clearly does not serve as an exclusive listing of those circumstances that may lead to the termination of rental assistance to a participant. For example, § 17b-812-13 provides broader grounds for termination, as it provides that the defendant may *both* deny rental assistance to initial applicants and terminate rental assistance to admitted participants on the bases of the enumerated grounds for termination, some of which—such as registration as a sex offender or unpaid rent or other moneys—have no corollary in § 17b-812-12.

In the present case, the plaintiff was subject to a sex offender registration requirement at the time he was

receiving rental assistance benefits. The defendant had the discretion to terminate rental assistance to program participants subject to such registration requirements. The defendant did so. In my view, the text of § 17b-812-13 of the regulations is clear and permits the defendant to terminate rental assistance to program participants in the very manner in which she did so in regard to the plaintiff.

The majority, however, determines that the termination of rental assistance to the plaintiff constitutes a "new obligation" on the plaintiff's sex offender status resulting from his 1997 conviction that runs afoul of Connecticut's codified presumption against retroactive legislation. General Statutes § 55-3. I disagree with the majority's characterization that the defendant's reliance on § 17b-812-13 (9) of the regulations constituted retroactive application of the regulation. As I have explained, the regulation provides the defendant with the discretion to terminate current rental assistance benefits whenever a participant falls within one of the nine outlined scenarios. See Regs., Conn. State Agencies § 17b-812-13. The majority endorses the plaintiff's premise for retroactivity, namely, that application of the regulation to the plaintiff imposed an additional legal burden on his sex offender status stemming from his 1997 conviction, the same conviction that requires the plaintiff to remain registered as a sex offender in the present.[2] This is an argument that the trial court properly rejected.

As the United States Supreme Court has observed, just because a statute "is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law," it does not necessarily denote retroactivity. (Citation omitted.) *Landgraf* v. *USI Film Products*, 511 U.S. 244, 269, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). In the trial court's view, it was "absurd" to argue that the plaintiff had any expectation in 1997 that his conviction would lead to a potential future inability to receive rental assistance in 2013. I would agree with the trial court that § 17b-812-13 (9) of the regulations is not retroactive merely because the plaintiff's presence on the sex offender registry stems from a conviction that occurred prior to the current regulation's promulgation. See also *Reynolds* v. *United States*, 292 U.S. 443, 449, 54 S. Ct. 800, 78 L. Ed. 1353 (1934) (statute not retroactive "merely because the facts or requisites upon which its subsequent action depends . . . are drawn from a time antecedent to the enactment"); *Cox* v. *Hart*, 260 U.S. 427, 435, 43 S. Ct. 154, 67 L. Ed. 332 (1922) ("[a] statute is not made retroactive merely because it draws upon antecedent facts for its operation"); *United States* v. *Leach*, 639 F.3d 773, 743 (7th Cir. 2011) (statute that "creates new, prospective legal obligations based on the person's prior history" is not retrospective).

Under the majority's view, § 17b-812-13 (9) of the regulations could not fairly be applied to the plaintiff because his conviction leading to his sex offender registration occurred in 1997 and the new regulation was promulgated in 2012. But then, is the same not true for any other person seeking or currently receiving rental assistance who is required to register as a sex offender due to a conviction that occurred prior to 2012? And if so, would not § 17b-812-13 (9) of the regulations therefore apply only to those registered sex offenders whose underlying convictions occurred *after* 2012, in order to not constitute a "new obligation" and thereby run amiss of § 55-3? This result would seemingly apply to the other subsections of § 17b-812-13 of the regulations that were promulgated in 2012, most of which are for acts far more benign than one that would warrant a participant's inclusion on the sex offender registry. For example, § 17b-812-13 (7) of the regulations provides the defendant with the authority to terminate rental assistance to a participant who has engaged in violent behavior toward the defendant's personnel. Similarly, § 17b-812-13 (8) of the regulations permits the defendant to terminate rental assistance to a participant who fails to report a change in income that results in rental assistance overpayments in excess of $2500. Under the majority's reasoning, the defendant is barred from terminating the rental assistance benefits of participants who were violent or collected excess assistance payments prior to the promulgation of the new regulation in 2012 because at the time the participants committed such acts they did not rely on the fact that, in deciding to behave violently or accept overpayments, they would face ineligibility for future benefits after 2012.

Indeed, the majority's agreement with the plaintiff's argument runs the risk of potentially causing some regulations to become frozen in time, thereby eroding the discretion and flexibility of administrative agencies to provide continued public benefits when faced with finite resources to do so. As the defendant stated in her brief, the Department of Housing is tasked with administering a public benefit program for which there is an overwhelming demand from citizens seeking assistance that greatly outpaces the defendant's ability to provide rental subsidies to all those who seek them.[3] Given that the defendant has a limited amount of funds to devote to the rental assistance program, the defendant must have the necessary discretion to deny applicants admission to the program and terminate the benefits of those already admitted in order to reallocate those funds to other persons in need of assistance. Regulations such as § 17b-812-13 achieve this objective by providing the defendant with discrete and articulable criteria on which to deny or terminate rental assistance without wading into the mire of arbitrary and unprincipled decision making. The majority's approach has the result of crippling the defendant's discretionary admin-

istration of the rental assistance program—or, for that matter, any other executive agency's administration of a public benefit program. This is particularly so under the circumstances of the present case, where the defendant terminated the plaintiff's benefits not on a whim but pursuant to the articulable criteria contained in a lawfully promulgated regulation.

In my view, a more fitting approach to this issue is reflected in the series of Illinois medical licensing cases cited by the defendant and on which the trial court relied in part in reaching its decision that § 17b-812-13 of the regulations is not retroactive. See *Bhalerao* v. *Illinois Dept. of Financial & Professional Regulations*, 834 F. Supp. 2d 775, 783 (N.D. Ill. 2011); *Consiglio* v. *Dept. of Financial & Professional Regulation*, 988 N.E.2d 1020, 1029 (Ill. App. 2013), aff'd sub nom. *Hayashi* v. *Dept. of Financial & Professional Regulation*, 25 N.E.3d 570 (Ill. 2014), cert. denied, U.S. , 135 S. Ct. 2868, 192 L. Ed. 2d 897 (2015); *Rodrigues* v. *Quinn*, 990 N.E.2d 1179, 1182 (Ill. App. 2013). In *Bhalerao*, the Illinois statute at issue required the automatic revocation of the medical license of any health-care professional who had been convicted of a criminal battery. *Bhalerao* v. *Illinois Dept. of Financial & Professional Regulations*, supra, 780. The plaintiff argued that the statute operated retroactively because the termination of his medical license was predicated on a criminal conviction that occurred prior to the statute's enactment. Id., 782–83. In rejecting the plaintiff's claims, the District Court observed that "it seems superficial to argue that [the] [p]laintiff might have decided not to commit the battery or might have resisted conviction more vigorously had he known that he faced not only criminal penalties but also might not be entitled to the exercise of the [Illinois state agency's] discretion in regard to whether his license would be revoked." (Internal quotation marks omitted.) Id., 784; see *LaGuerre* v. *Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998) (invoking similar reasoning in context of deportation), cert. denied, 528 U.S. 1153, 120 S. Ct. 1157, 145 L. Ed. 2d 1069 (2000). The court in *Bhalerao* reasoned that the statute at issue looked only "prospectively at [the] [p]laintiff's right to continue practicing medicine in the future. . . . It does not impinge on the right that [the] [p]laintiff had in the preceding years to practice—for example, by divesting him of any profits that he earned prior to its enactment or deeming unauthorized his practice of medicine during the time between his conviction and the revocation of his license." (Citation omitted.) *Bhalerao* v. *Illinois Dept. of Financial & Professional Regulations*, supra, 783.

The reasoning of *Bhalerao* and the other decisions determining that the Illinois medical licensing statute was not impermissibly retroactive has been relied on in other contexts in which parties have raised the issue of the retroactivity of statutes or regulations based on

conduct that occurred prior to their enactment or promulgation. See *Smith* v. *Doe*, 538 U.S. 84, 91, 105–106, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (upholding inclusion of persons on sex offender registry whose crimes were committed prior to passage of act establishing registry); *Ohio Head Start Assn., Inc.* v. *United States Dept. of Health & Human Services*, 873 F. Supp. 2d 335, 348 (D.D.C. 2012) (regulation authorizing federal agency to use antecedent data in order to determine eligibility for future benefits was not retroactive), aff'd, 510 Fed. Appx. 1 (D.C. Cir. 2013); *In re Sheneal W.*, 45 Conn. Supp. 586, 595, 728 A.2d 544 (1999) (legislature's use of present perfect tense in statute denotes intent for court to consider actions of parents prior to statute's passage); *Hernandez* v. *Dept. of State, Division of Licensing*, 629 So. 2d 205, 206 (Fla. App. 1993) (revocation of private investigator's license on basis of felony conviction that occurred prior to enactment of statute requiring revocation was not retroactive), review denied, 640 So. 2d 1107 (Fla. 1994); *Wilson* v. *Dept. of Financial & Professional Regulation*, 991 N.E.2d 779, 783, 786 (Ill. App. 2013) (statute invoked to deny renewal of mortgage loan originator license on basis of tax fraud conviction not retroactive when plaintiff's conviction was prior to enactment of statute); *Board of Medical Examiners* v. *Nzedu*, 228 S.W.3d 267, 272 (Tex. App. 2007) (statute permitting consideration of applicant's attempt to pass state medical licensing exam prior to enactment of statute limiting permissible number of attempts was not unconstitutional and application of statute was not retroactive). The circumstances of the present case are akin to these cases. The plaintiff claims, and the majority agrees, that because the plaintiff's sex offender registration requirement stemmed from a 1997 conviction and the new regulation was promulgated in 2012, then any application of the regulation to him is necessarily retroactive. The reasoning of *Bhalerao* and the other authorities I have cited demonstrate that this is not the case, and that the plaintiff's sex offender status based on a prior conviction does not render § 17b-812-13 (9) of the regulations retroactive.

That being said, however, I reemphasize my initial point that the plain language of § 17b-812-13 of the regulations unambiguously provides the defendant with the discretion to terminate rental assistance to program participants who are currently subject to registration as a sex offender. As the plaintiff was subject to registration when the defendant terminated his rental assistance, the plaintiff's retroactivity concerns fail to materialize in the present case.[4] Accordingly, I would affirm the judgment of the trial court dismissing the plaintiff's administrative appeal. Because the majority opinion does not account for the defendant's present regulatory authority to terminate rental assistance to those participants currently on a sex offender registry and has the ultimate effect of curtailing the discretion

of the defendant in carrying out her statutory duties, I respectfully dissent.

[1] The Commissioner of Housing acts on behalf of the Department of Housing. For the sake of simplicity, all references to the defendant hereinafter include both the commissioner and the department.

[2] The plaintiff's argument on this point in his brief is slightly more attenuated. The plaintiff reasons that because his inclusion on the sex offender registry is the basis for the termination of his rental assistance benefits, and the only reason he is on the registry in the first place is because of his 1997 conviction, the sole basis for the termination of his rental assistance benefits, therefore, is actually his 1997 conviction. The plaintiff suggests that relying on his presence on the sex offender registry is a "hyper-technical bifurcation" of his conviction and his duty to register as a sex offender.

[3] According to the defendant, there are currently more than 4000 applicants on the waiting list for the rental assistance program.

[4] I briefly observe that, in my view, the trial court properly rejected the plaintiff's additional claims that the defendant denied him due process in terminating his rental assistance benefits. The administrative history of the present case clearly establishes that the plaintiff was provided with notice and a hearing in accord with the defendant's own procedures as outlined in § 17b-812-14 of the Regulations of Connecticut State Agencies. See *Goldberg* v. *Kelly*, 397 U.S. 254, 267–71, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).